DETROIT POLICE OFFICERS ASSOCIATION v CITY OF DETROIT

Docket Nos. 166228, 166386. Submitted December 20, 1994, at Detroit.
Decided June 16, 1995; approved for publication July 26, 1995,
at 9:05 A.M. Leave to appeal granted, 450 Mich —.

The Detroit Police Officers Association and other unions repre-
senting Detroit police officers and fire fighters filed an unfair
labor practice charge in the Michigan Employment Relations
Commission against the City of Detroit relating to the adoption
of a resolution by the City of Detroit Policemen and Firemen
Retirement System Board of Trustees changing the method for
determination of eligibility for duty-related disability retire-
ment. The retirement board intervened and aligned with the
city. A hearing referee ruled against the unions. The commis-
sion overruled the decision of the referee and ordered the city
and the retirement board to rescind the resolution. The city
and the retirement board appealed, and the Court of Appeals
consolidated the appeals and stayed the order of rescission.

The Court of Appeals *held:*

1. The commission had jurisdiction over the retirement board
because the board voluntarily submitted to the commission's
jurisdiction by intervening in the matter.

2. Pensions and the significant provisions of a pension plan
are mandatory subjects of collective bargaining under the
public employment relations act, MCL 423.201 *et seq.*; MSA
17.455(1) *et seq.* Refusal to bargain with regard to a mandatory
subject of collective bargaining or, as in this case, unilateral
action on the part of a public employer regarding such subject
may constitute an unfair labor practice.

3. The commission's decision in this case that the unilateral
change in the method of determining eligibility for duty-related
disability retirement constituted an unfair labor practice was
supported by competent, material, and substantial evidence on
the whole record and was authorized by law.

Affirmed.

REFERENCES

Am Jur 2d, Labor and Labor Relations § 3025.
What constitutes unfair labor practice under state public employee
relations acts. 9 ALR4th 220.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — PENSIONS
— COLLECTIVE BARGAINING — UNFAIR LABOR PRACTICES.

Pensions and the significant provisions of a pension plan are mandatory subjects of collective bargaining under the public employment relations act; refusal to bargain or unilateral action by a public employer regarding pensions may constitute an unfair labor practice (MCL 423.201 *et seq.*; MSA 17.455[1] *et seq.*).

*Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, P.C.* (by *James M. Moore*), for the Detroit Police Officers Association.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Mark Brewer*), for the Detroit Fire Fighters Association.

*Bernard Feldman,* for the Detroit Police Lieutenants and Sergeants Association.

*Donald Pailen,* Corporation Counsel, *Thomas L. Walters,* Deputy Corporation Counsel, and *Terri L. Renshaw,* Supervising Assistant Corporation Counsel, for the City of Detroit.

*Stringari, Fritz, Kreger, Ahearn & Crandall, P.C.* (by *Brian S. Ahearn*), for the City of Detroit Policemen and Firemen Retirement System Board of Trustees.

Before: MARILYN KELLY, P.J., and W. P. CYNAR[*] and K. T. WILDER,[**] JJ.

PER CURIAM. These are consolidated appeals as of right by the City of Detroit and the City of Detroit Policemen and Firemen Retirement System Board of Trustees. They challenge a decision

---

[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

[**] Circuit judge, sitting on the Court of Appeals by assignment.

and order of the Michigan Employment Relations Commission (MERC). MERC found that the Board of Trustees had committed an unfair labor practice when it made a unilateral change in a mandatory subject of collective bargaining.

On appeal, the City and the Board assert that the resolution which they adopted only clarified language of the City Charter; it did not affect rights of the charging parties, the Detroit Police Officers Association (DPOA), the Detroit Fire Fighters Association (DFFA) and the Detroit Police Lieutenants and Sergeants Association (DPLSA). We affirm.

I

A

The Charter of the City of Detroit created the Detroit Policemen and Firemen Retirement System. The Retirement System provides for retirement allowances and death benefits for police and firefighting personnel and their beneficiaries. Detroit Charter, tit IX, ch VII, art I, p 7. A Board of Trustees administers and manages the Systems' funds. Detroit Charter, tit IX, art III, § 1, p 9. The Charter contains explicit provisions regarding the award of pensions following the development of duty- and nonduty-related incapacitation. It provides, in part:

> If a member shall become totally incapacitated for duty by reason of injury, illness or disease resulting from performance of duty and if the Board of Trustees shall find such injury, illness or disease to have resulted from the performance of duty, on written application to the Board of Trustees by or on behalf of such member or by the head of his Department such member shall be retired; provided, the Medical Director, after examination

of such member, shall certify to the Board of Trustees his total incapacity. [Detroit Charter, tit IX, ch VII, art VI, part B, § 1, p 19.]

On December 6, 1990, the Board of Trustees adopted a resolution that resolved, among other things, that "findings made by Medical Boards of Review shall be strictly limited to 'medical findings,'" and that "it shall be the responsibility of the Board of Trustees to determine whether the underlying event or events that gave rise to the disability occurred while in the performance of duty . . . ."

The DPOA, the DFFA and the DPLSA, which have been the exclusive collective bargaining representatives for their respective bargaining units since 1965, challenged the resolution. They asserted that it violated the terms of their respective collective bargaining agreements, because it altered the method for determining whether a disability was duty-related. They argued that the unions' collective bargaining agreements adopted by reference relevant Detroit City Charter provisions, including Charter pension provisions, subject to the agreements. They claimed that incorporated under the bargaining agreements were the practices by which the City had always awarded pensions and retirement benefits. They argued that the resolution ignored "maintenance of conditions" clauses in the agreements. These require that terms and conditions of employment in force on the effective date of the agreements remain in effect during their lifetime, except as otherwise provided in them.

The unions challenged the Board of Trustees' resolution before a hearing referee. They advanced an unfair labor practice claim. The unions asserted that pensions are a mandatory subject of

collective bargaining, pointing to the collective bargaining agreements which contain extensive provisions relating to pensions. The provisions illustrate that, since the passage of the Public Employment Relations Act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*, the parties have negotiated over pension eligibility. In addition, the identity of the party authorized to decide pension eligibility and the authority of the Board of Trustees concerning pension matters have been negotiated. The unions urged that the Board of Trustees had committed an unfair labor practice by ignoring the duty to bargain on a mandatory subject of collective bargaining. They had done so, also, in unilaterally modifying the method for determining eligibility for duty-related pensions.

### B

The hearing referee concluded that the resolution vesting the Board with authority to determine if an injury was duty-related was consistent with the language of the City Charter. The unions appealed to MERC.

MERC overruled the decision. It found that the final arbiter of whether an injury/illness is duty-related is the Medical Board of Review, which is also established by the City Charter. MERC concluded that the unilateral change made by the Board of Trustees' resolution was an unfair labor practice, because pensions are a mandatory subject of bargaining. MERC ordered that the City and the Board of Trustees rescind the resolution.

The City and the Board appealed from MERC's decision to our Court. We granted the Board's motion to stay the portion of MERC's order which required it to rescind the resolution.

II

Two preliminary matters require our consideration. The first is the standard of review. Appellate review of a decision of MERC is limited. We will not set aside a MERC decision if its findings are supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 423.216(e); MSA 17.455(16)(e); *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 184 Mich App 551, 556-557; 459 NW2d 15 (1990). Substantial evidence is more than a scintilla but substantially less than a preponderance of the evidence. *Sault Ste Marie v Fraternal Order of Police Labor Council, State Lodge of Michigan*, 163 Mich App 350, 354; 414 NW2d 168 (1987). We may set aside a MERC decision even if it is supported by substantial evidence if it is based on a "substantial and material error of law." MCL 24.306(1)(f); MSA 3.560(206)(1)(f); *Genesee Co Social Service Workers Unions v Genesee Co*, 199 Mich App 717, 721; 502 NW2d 701 (1993). We will apply both tests in reviewing the matter before us.

Second, we hold that a related case, recently decided by another panel of our Court, is inapposite here. *In re Storm*, 204 Mich App 323; 514 NW2d 538 (1994). In *Storm*, the issue before the Court involved the trial court's refusal to take superintending control, the denial of injunctive relief and the grant of summary disposition. The panel recast the unions' claim as a challenge to the grant of summary disposition. It concluded that a Board of Trustees' resolution challenged there merely restated the plain language of the City Charter and affirmed the grant of summary disposition. However, the opinion did not deal with MERC's conclusion that the practice constituted an unfair labor practice. The entire consideration given to the issue was:

Plaintiffs' second issue was rendered moot by the June 21, 1993, issuance of a decision and order by the Michigan Employment Relations Commission in cases C90 L-299 and C90 L-301. We note that an appeal is pending in this Court from that order. (Docket Nos. 166228 and 166386, consolidated). [*Storm,* p 328.]

Were our consideration limited to interpretation of the City Charter, *Storm* would bind us pursuant to Administrative Order No. 1994-4. However, *Storm* never reached the question of whether unilateral modification of the manner in which pensions are awarded constitutes an unfair labor practice. Thus, since the reasoning and holding in *Storm* are not controlling, we decide the issues under the standard of review already recited.

### III

#### A

The City and the Board first argue that MERC lacked authority to find that the City committed an unfair labor practice, because the Board not the City passed the resolution. They claim that, since the Board was acting in its capacity of fiduciary rather than as an agent of the City, its actions are not subject to MERC review. They also assert that, as the Board was not served with an unfair labor practice complaint, MERC cannot exercise jurisdiction over it.

It is improper for an employer to remove a subject of mandatory bargaining from the scope of PERA by assigning its management to a body insulated from PERA. On this point, we agree with the reasoning in the MERC opinion:

Respondent's and intervenor's argument that the City of Detroit is not responsible for the ac-

tions of the Board of Trustees is invalid. An employer is responsible for its bargaining obligations regardless of whatever actions are taken by an independent pension board. [MERC Decision and Order, Case Nos. C90 L-299 and C90 L-301 citing *Local 1279, Int'l Ass'n of Firefighters v City of Westland,* 1977 MERC Lab Op 230.]

Furthermore, the Board of Trustees voluntarily submitted to MERC's jurisdiction by intervening in this matter. MCL 423.216(a); MSA 17.455(16)(a); See *Detroit v Killingsworth,* 48 Mich App 181; 210 NW2d 249 (1973). Because it intervened, we also find no merit in the Board's claim that it was not served with an unfair labor practice charge. We hold that MERC had jurisdiction over the Board of Trustees.

B

The City and the Board also contend that the MERC erred in finding that the December resolution constituted a change in working conditions. Rather, they argue, it merely reaffirmed the duties and responsibilities of the Board as defined in the City Charter. We disagree.

Our Supreme Court resolved a similar dispute in *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 63; 214 NW2d 803 (1974). There, the City initiated and conducted a voter referendum to amend the City Charter provisions controlling the police retirement plan. MERC concluded that the City could not require that any agreement reached regarding retirement provisions for police officers be approved by a vote of the electorate. Our Supreme Court considered the apparent statutory conflict between the language of the City Charter and the duty under PERA to bargain in good faith

on a mandatory subject of bargaining. The Court concluded:

> The substantive details of a retirement plan, such as those now a part of the Detroit City Charter, are contractual and charter provisions only and do not rise to the stature of a state law requirement as the City would have us hold. Accordingly, since the substantive details of the retirement plan may be classified only as contractual or charter provisions, they are subject to the duty to bargain found in PERA—a state law. [*Police Officers Ass'n,* p 67.]

In accord with *Detroit Police Officers Ass'n,* we again hold that pensions and the significant provisions of a pension plan are mandatory subjects of collective bargaining. See also *Central Michigan Univ Faculty Ass'n v Central Michigan Univ,* 404 Mich 268, 279-280; 273 NW2d 21 (1978).

In *Central Michigan Univ Faculty Ass'n,* our Supreme Court said:

> [T]he PERA was intended by the Legislature to supersede conflicting laws and is superimposed even on those institutions which derive their powers from the Constitution itself. . . . The statutory test of the PERA is whether the particular aspect of the employment relationship is "a term or condition of employment". Under the act, a particular aspect of the employment relationship is a mandatory subject of collective bargaining, even if it may be said to be only minimally a condition of employment. [*Id.,* pp 279-280.]

Refusal to bargain on a mandatory subject or unilateral action on the part of a public employer regarding such a subject may constitute an unfair labor practice. *Southfield Police Officers Ass'n v Southfield,* 433 Mich 168, 178; 445 NW2d 98 (1989).

Consequently, we find that MERC's decision was supported by competent, material and substantial evidence on the whole record, and was authorized by law. It was not based on a substantial and material error of law. Const 1963, art 6, § 28; MCL 423.216(e); MSA 17.455(16)(e); *Southfield Police Officers Ass'n,* p 175.

Furthermore, we find no error in MERC's consideration of the Board of Trustees' past practices in reaching its decision. MERC was required to decide whether the City had engaged in a unilateral modification of an existing practice. Evidence indicated that the Board had deferred to the Medical Review Board in the past. The determinations of the Medical Review Board had been treated as binding in past cases. Consideration of the prior relevant opinions of corporate counsel supporting the existing practice was also necessary to its determination of whether the change constituted a modification of an existing practice. MCL 423.216; MSA 17.455(16). See also *Kelly v Detroit,* 358 Mich 290; 100 NW2d 269 (1960); *Pobursky v Detroit,* 359 Mich 293; 102 NW2d 203 (1960).

Because pensions are a mandatory subject for bargaining, we reject the City's and the Board's claims that methods by which pensions were awarded were either permissive or illegal bargaining subjects. *Detroit Police Officers Ass'n,* p 54, n 6.

Affirmed.