DETROIT POLICE OFFICERS ASSOCIATION v DETROIT

Docket Nos. 103592, 103610. Argued April 10, 1996 (Calendar No. 7). Decided July 16, 1996.

> The Detroit Police Officers Association and other unions representing Detroit police officers and fire fighters filed unfair labor practice charges with the Michigan Employment Relations Commission against the City of Detroit. The charges arose following the adoption of a resolution by the Policemen and Firemen Retirement System Board of Trustees that it was to be responsible for determining duty-related incapacity. Although the city charter provides that the board of trustees is to decide questions of incapacity and duty-related disability, in actual practice, the medical director made those decisions, with disputes decided by the medical board of review, and the decisions binding on the board of trustees. A hearing referee found the resolution to be consistent with the charter and that the past practice amounted to an improper amendment of the charter. The MERC reversed, finding that an unfair labor practice had been committed, and ordered the board of trustees to rescind the resolution. It emphasized that over the years the parties had acquiesced in the medical director's determinations. The Court of Appeals, MARILYN KELLY, P.J., and W. P. CYNAR and K. T. WILDER, JJ., affirmed in an opinion per curiam (Docket Nos. 166228, 166386). The city appeals.

> In an opinion by Justice CAVANAGH, joined by Justices LEVIN, BOYLE, and MALLETT, the Supreme Court held:

> The board of trustees committed an unfair labor practice when it made a unilateral change in a mandatory subject of collective bargaining. The association has shown that the parties had a meeting of the minds with respect to the new terms or conditions and that the past practice was so prevalent and widely accepted that there was an agreement to modify the contract.

> 1. Unambiguous contract language controls unless a past practice is so widely acknowledged and mutually accepted that it amends the contract. The party seeking to supplant the contract language must show that the parties had a meeting of the minds with respect to the new terms or conditions so that there was an agreement to modify the contract. The parties' agreement can be

deduced from their course of conduct if it is unequivocal and the terms of modification are definite, certain, and intentional. The party seeking to supplant the contract language must prove that the other party intentionally chose to reject the negotiated contract and knowingly acted in accordance with the past practice.

2. In this case, it was shown that the parties' acceptance and adherence to the past practice modified the contract language, supporting a finding that the board of trustees intentionally chose to reject the negotiated contract and knowingly acted in accordance with the past practice.

Affirmed.

Justice RILEY, joined by Chief Justice BRICKLEY and Justice WEAVER, dissenting, stated that when the MERC originally heard this case it did not have the benefit of the standard offered in *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309 (1996), thus, its decision was not based on a proper foundation. Because the MERC has been charged by statute to see a case to resolution and is in the best position to apply the *Port Huron* standard, this case should be remanded to the MERC.

212 Mich App 383; 538 NW2d 37 (1995) affirmed.

*In re Storm*, 204 Mich App 323; 514 NW2d 538 (1994), overruled.

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Theodore Sachs* and *Ronald Helveston*), *Bernard Feldman*, and *Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, P.C.* (by *James M. Moore*), for the appellees.

*Stringari, Fritz, Kreger, Ahearn & Crandall, P.C.* (by *Brian S. Ahearn*), for the intervenor-appellant.

City of Detroit Law Department (by *Phyllis A. James*, Corporation Counsel, and *Terri L. Renshaw*, Deputy Corporation Counsel), for the respondent.

CAVANAGH, J. The issue presented by this case is whether the parties' past practice is so widely acknowledged and mutually accepted that it amends the contradictory and unambiguous contract language in the collective bargaining agreement. Applying the majority's analysis and holding in the recently decided

*Port Huron Ed Ass'n v Port Huron Area School Dist,* 452 Mich 309; 550 NW2d 228 (1996),[1] we hold that the association has shown that the parties had a meeting of the minds with respect to the new terms or conditions and that the past practice was so prevalent and widely accepted that there was an agreement to modify the contract. Thus, the board of trustees committed an unfair labor practice when 'it unilaterally changed a mandatory subject of bargaining.

I. FACTS AND PROCEDURAL HISTORY

The charter of the City of Detroit created a pension system that provides retirement and death benefits for its fire fighters and police officers. The charter also contains provisions regarding the award of benefits as a result of duty- or nonduty-related incapacity. It provides that the board of trustees, which manages the retirement system, decides whether an applicant's disability is duty related:

> If a member shall become totally incapacitated for duty by reason of injury, illness or disease resulting from performance of duty and *if the Board of Trustees shall find such injury, illness or disease to have resulted from the performance of duty,* . . . such member shall be retired . . . . [Detroit Charter, tit IX, ch VII, art VI, part B, § 1 (emphasis added).]

Additionally, the charter provides that the medical director shall certify to the board of trustees that the

---

[1] I did not join the majority opinion in *Port Huron,* but instead chose to adopt the analysis presented in *Mid-Michigan Ed Ass'n v St Charles Community Schools,* 150 Mich App 763; 389 NW2d 482 (1986), in my dissenting opinion. Under that case, the instant board of trustees committed an unfair labor practice under either the majority's or my dissent's analysis when it unilaterally changed a mandatory subject of bargaining.

person is totally incapacitated. If a dispute arises over
the medical director's finding, then the board of trus-
tees is to "refer the matter in dispute to a Medical
Board of Review consisting of three physicians or
surgeons, of whom one shall be named by the Board
of Trustees, one by the affected member, beneficiary,
or other person claiming benefits, and the third by
the two so named. . . ." Detroit Charter, tit IX, ch
VII, art III, § 12(c). The medical findings of this medi-
cal board of review are binding on the board of
trustees.

However, at some point, perhaps as early as 1941,
the actual practice arose of having the medical direc-
tor determine duty relatedness, as well as physical
incapacity, with any dispute going to the medical
board of review. Further, under the past practice, the
medical board's decision was binding on the board of
trustees, even with regard to duty relatedness.

In an attempt to recapture the duty-relatedness
decision making, the board of trustees passed a reso-
lution on December 6, 1990, stating in pertinent part:

> [F]indings made by Medical Boards of Review shall be
> strictly limited to "medical findings" . . . .

The board of trustees further stated that it was the
one responsible for deciding whether the "underlying
event or events that gave rise to the disability
occurred while in the performance of duty . . . ."
The police and fire fighter unions responded to this
resolution by filing an unfair labor practice charge
with the MERC.[2]

---

[2] The association also brought a civil action for declaratory and injunc-
tive relief in the circuit court. In *In re Storm*, 204 Mich App 323; 514

The MERC found that an unfair labor practice had been committed and reversed the hearing referee's decision and recommended order of dismissal. The hearing referee had found that the resolution was consistent with the wording of the charter, and that there was no apparent reason for adoption of the resolution other than to emphasize the board of trustees' already clearly delineated authority to determine whether an injury or illness is duty related. He further found that any alleged past practice that resulted in the delegation of the decision making on the issue of duty relatedness from the board of trustees to the medical board of review would be an improper amendment of the charter.

In reversing, the MERC emphasized its understanding that over the years the parties had actually acquiesced in the medical director's determination with regard to duty relatedness, with binding review by the medical board of review. The MERC stated:

> Contrary to the holding of the [hearing referee], we find in favor of the Charging Party. Past practice, the opinions of Corporate Counsel, the opinion of legal counsel for the Board of Trustees, and a Circuit Court decision all establish that the Medical Board of Review is the final arbiter of whether an injury/illness is duty related.

---

NW2d 538 (1994), the Court of Appeals upheld the circuit court's grant of the board of trustees' motion for summary disposition upholding the disputed December 6, 1990, resolution as nothing more than a restatement of what the clear and unambiguous language in the charter called for: "[I]t is for the board of trustees to determine whether a particular disability or death occurred in the performance of duty." *Id.* at 327. Prior practice did not matter because the "principle that a longstanding interpretation of a statute by the agency that administers it is entitled to great weight does not control where the interpretation is clearly wrong." *Id.*

To the extent that *In re Storm* is inconsistent with this opinion, it is overruled.

> Pensions and the significant provisions of a pension plan are mandatory subjects of bargaining. *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44 [214 NW2d 803] (1974). We find in the case before us that the board which determines eligibility for a duty-related pension is a significant provision in the Detroit pension plan and is a mandatory subject of bargaining. The unilateral change of that mandatory subject effectuated by the December 6, 1990, resolution is an unfair labor practice. [1993 MERC Lab Op 424, 432.]

The MERC ordered the board of trustees to rescind the December resolution, and it directed the city and the board of trustees to stop this unilateral changing of the authority of the board of trustees regarding disability pensions.

The parties appealed, and the board of trustees sought a stay of the MERC order. The Court of Appeals granted the stay and affirmed the MERC in every respect. 212 Mich App 383; 538 NW2d 37 (1995). This Court granted the applications for leave to appeal of the city and the board of trustees.

## II. *PORT HURON*

In *Port Huron*, which we recently decided, the association and the school district had negotiated and signed a collective bargaining agreement in 1978. That contract contained a clause mandating the proration of benefits for teachers that worked less than a full year. This clause was included in future contracts in each succeeding year, including 1987-88, the year in dispute. Between 1978 and 1987, the eleven teachers who worked less than a full year received full insurance benefits, i.e., the benefits were not prorated as called for in the contract. However, in 1988 the district notified teachers hired during the middle of that

school year that their insurance benefits would be prorated and thus they would not be provided benefits for the month of August.

The association filed an unfair labor practice charge, alleging that the district had a duty to bargain before unilaterally changing the insurance benefits, a mandatory subject of bargaining. On appeal to this Court, the majority held that

> the unambiguous contract language controls unless the past practice is so widely acknowledged and mutually accepted that it amends the contract. The party seeking to supplant the contract language must show the parties had a meeting of the minds with respect to the new terms or conditions so that there was an agreement to modify the contract. [*Port Huron, supra* at 312.]

The majority approvingly cited a case that stated that the parties' agreement to modify the contract can be deduced from their course of conduct if it is unequivocal and the terms of modification are definite, certain, and intentional. See *Port Huron, supra* at 329-330. Further, the majority indicated that the party seeking to supplant the contract language must prove that the other party intentionally chose to reject the negotiated contract and knowingly acted in accordance with the past practice.

A majority of this Court found that the association did not present proof that the district knowingly paid teachers hired midyear insurance benefits for the entire summer in disregard of contract language to the contrary with the intent that the payment would supplant the contract. The Court reasoned that the MERC did not find that the previous payments of insurance benefits were anything more than a mistake.

Thus, the association did not meet its burden of proof in this respect.

### III. APPLICATION

There are a number of facts in the record that indicate that the parties' acceptance of and adherence to the past practice at issue modified the parties' contract language to the contrary.

Before the MERC, the association argued that since 1941, when the charter was adopted, the medical director made the initial determination whether the disability was duty related. If a dispute arose on that issue, it was reviewed by a medical board of review. That was the procedure that was in effect under the charter before the public employment relations act was enacted. MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* To establish that this past practice existed, the association introduced into evidence minutes of the board of trustees from 1984 to 1990, in which over one hundred decisions of the medical board of review regarding the issue of duty relatedness were accepted as final and binding by the board of trustees.

As further proof that the past practice existed, the association also introduced evidence that in the city attorney's opening statement before the MERC, she admitted "that there has been a history with the [board of trustees] that the duty-relatedness decision, which is involved in determining whether or not an individual [is] entitled to a duty disability, has been made in the past by the Medical Board of Review." Additionally, the board of trustees' own attorney disapproved of the December resolution, stating, "It is the current and well established practice for the Medical Director to render his opinions, conclusions and

recommendations and make findings as to whether the applicant is totally incapacitated for the performance of his/her duties and whether such disability is duty or non-duty related." This is also consistent with the testimony of a member of the board of trustees who testified that from at least 1983, the date the witness became a member of the board of trustees, to 1990 the decisions of the medical board of review regarding both disability and causation were considered binding on the board of trustees. In hundreds of cases, the board of trustees unwaveringly acknowledged and accepted the medical board's determinations regarding whether an individual's disability occurred during the performance of a job-related duty.[3]

In addition, the association entered into evidence several forms developed by the board of trustees for use by the medical board. These forms ask the medi-

---

[3]   *Q. [Mr. Brewer:]* Okay. Thank you.

Mr. Lafferty, prior to the adoption of the resolution at issue here, the resolution adopted on December 6, 1990, if the Pension Board, I mean your experience on the Board had ever denied a disability pension application for any reason, was that decision final?

*A.* No, it was not.

*Q.* Can you explain why it was not?

*A.* The individual had the right to appeal to a Medical Board of Review.

*Q.* Was the decision of the Medical Board of Review final and binding on the Board of Trustees?

*A.* Yes, it was.

*Q.* Did the Medical Board of Review decide questions such as disability?

*A.* Yes, it did.

*Q.* Did it decide questions of causation?

*A.* Yes, it did.

*Q.* Did it decide questions of whether a disability occurred while a member was performing his or her duty?

*A.* That is correct.

cal board of review to make a duty-connectedness finding. Specifically, one form states: "It is the duty of the medical director to determine whether or not there is a disability present and whether or not the disability is causally related to the performance of the applicant's duties" as a police officer or fire fighter. The form then emphasizes that the medical board of review's findings are final and binding on all parties.

These facts in the record establish not only that a past practice existed, but also indicate that the parties had a meeting of the minds with respect to the new terms or conditions of the past practice. The past practice of the medical board rendering a final and binding decision on the duty-relatedness issue was so prevalent and widely accepted that even the city attorney and the board of trustees' attorney admitted it existed. Thus, the parties' actions in conformity with the past practice indicate that there was an agreement to modify the contract language to the contrary.

The parties' agreement to modify the contract can further be deduced from their course of conduct. The evidence indicates that over a period of several years, the board of trustees unequivocally and intentionally agreed to be bound by the medical board of review's determination on the duty-relatedness issue. An overwhelming indication of this was the forms introduced, which were prepared by the board of trustees, that instructed the medical board of review to make a finding on the duty-relatedness issue and that that decision would be final and binding. The fact that the board of trustees prepared the forms shows not only that it acquiesced in the medical board of review's binding decision on the duty-relatedness issue, but

also that it intended that to be the practice. Thus, the evidence in the record supports a finding that the board of trustees intentionally chose to reject the negotiated contract and knowingly acted in accordance with the past practice.

### IV. CONCLUSION

On other grounds, we affirm the decision of the Court of Appeals, which upheld the MERC's finding that the board of trustees had committed an unfair labor practice when it made a unilateral change in a mandatory subject of collective bargaining. The association has shown that the parties had a meeting of the minds with respect to the new terms or conditions and that the past practice was so prevalent and widely accepted that there was an agreement to modify the contract.

LEVIN, BOYLE, and MALLETT, JJ., concurred with CAVANAGH, J.

RILEY, J. (*dissenting*).

I

In a relatively short opinion, the majority concludes that

> [t]he issue presented by this case is whether the parties' past practice is so widely acknowledged and mutually accepted that it amends the contradictory and unambiguous contract language in the collective bargaining agreement. Applying the majority's analysis and holding in the recently decided *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309; 550 NW2d 228 (1996), we hold that the association has shown that the parties had a meeting of the minds with respect to the new terms or conditions and that the past practice was so prevalent and widely accepted that

there was an agreement to modify the contract. Thus, the
board of trustees committed an unfair labor practice when
it unilaterally changed a mandatory subject of bargaining.
[*Ante* at 340-341.]

II

Although I agree that *Port Huron* is the proper test,
I believe that this case should be remanded to the
Michigan Employment Relations Commission. In my
opinion, the MERC is in the best position to apply the
test which is so clearly delineated in *Port Huron*.[1]

The MERC is an agency of the Department of Labor whose
authority is derived from and governed primarily by the
PERA, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* Section 16
of the PERA, which identifies certain types of conduct as

---

[1] In *Port Huron,* this Court stated:

Where unambiguous language in the agreement conflicts with the
past practice of the parties, however, a higher standard of proof is
required.
"The highest quantum of proof will ordinarily be required in
order to show that the parties intended by their conduct to amend
or modify clear and unambiguous contractual language, however."
[*Total Petroleum, Inc v Int'l Union of Operating Engineers, Local
670,* 78 Lab Arb (BNA) 729, 737 (Roberts, 1982).]

\*          \*          \*

The party seeking to supplant the contract language must submit
proofs illustrating that the parties had a meeting of the minds with
respect to the new terms or conditions—intentionally choosing to
reject the negotiated contract and knowingly act in accordance
with the past practice. See Elkouri & Elkouri [*How Arbitration
Works* (4th ed)], p 455. In such situations, it is the underlying
agreement to modify the contract that alters the parties' obliga-
tions, not the past practice. *Ford Motor Co v United Automobile,
Aircraft & Agricultural Workers, Local 600,* 19 Lab Arb (BNA) 237,
241-242 (Shulman, 1952). [*Port Huron, supra* at 328-330 (BOYLE,
J.)]

unfair labor practices, sets forth the procedure for the processing of unfair labor practice charges.

\*     \*     \*

In view of the discretionary authority delegated to the MERC in § 16 of the PERA, and to the MERC hearing referees in the general rules and regulations, it is apparent that the MERC's statutorily mandated function necessarily includes discretion in the substantive resolution of unfair labor practice cases. The MERC's authority is in no way limited to the factfinding function; rather, it continually extends to applying the substantive law in the resolution of claims brought before it. [*Smith v Lansing School Dist*, 428 Mich 248, 254-258; 406 NW2d 825 (1987).]

When it comes to labor disputes, like the one presented here, the MERC is unquestionably the favored body for resolution. In fact, the Legislature has stated that this state favors the resolution of labor disputes through the use of governmental agencies.

It is hereby declared as the public policy of this state that the best interests of the people of the state are served by the prevention or prompt settlement of labor disputes; that strikes and lockouts and other forms of industrial strife, regardless of where the merits of the controversy lie, are forces productive ultimately of economic waste; that the interests and rights of the consumers and the people of the state, while not direct parties thereto, should always be considered, respected and protected; and that the voluntary mediation of such disputes under the guidance and supervision of a governmental agency will tend to promote permanent industrial peace and the health, welfare, comfort and safety of the people of the state. [MCL 423.1;   MSA 17.454(1).]

The MERC has been endowed with a large amount of power to help it facilitate the resolution of labor dis-

putes. It can subpoena witnesses, administer oaths, take testimony and receive evidence. MCL 423.11; MSA 17.454(12) provides:

(1) Subject to Act No. 267 of the Public Acts of 1976, the commission and each commissioner and each person designated by the commission may hold public or private hearings within the state, subpoena witnesses and compel their attendance, administer oaths, take testimony, and receive evidence. A subpoena may be issued only after the mediation of a dispute shall have been actually undertaken.

(2) If a person is contumacious or refuses to obey a subpoena issued to the person, the circuit court of a county within the jurisdiction of which the inquiry is carried on, upon application by the commission, may issue to the person an order requiring the person to appear before the commission, to produce evidence or to give testimony touching the matter in question. Failure to obey an order may be punished by the court as contempt.

In the instant matter, the MERC had an opportunity to examine the relevant Detroit Charter:[2]

Contrary to the holding of the [hearing referee], we find in favor of the Charging Party. Past practice, the opinions of Corporate Counsel, the opinion of legal counsel for the Board of Trustees, and a Circuit Court decision all establish that the Medical Board of Review is the final arbiter of whether an injury/illness is duty related.

Pensions and the significant provisions of a pension plan are mandatory subjects of bargaining. *Detroit Police*

---

[2] The Detroit Charter provides in relevant part:

If a member shall become totally incapacitated for duty by reason of injury, illness or disease resulting from the performance of duty and if the Board of Trustees shall find such injury, illness or disease to have resulted from the performance of duty, . . . such member shall be retired . . . . [Detroit Charter, tit IX, ch VII, art VI, part B, § 1.]

*Officers Ass'n v Detroit*, 391 Mich 44 [214 NW2d 803] (1974). We find in the case before us that the board which determines eligibility for a duty-related pension is a significant provision in the Detroit pension plan and is a mandatory subject of bargaining. The unilateral change of that mandatory subject effectuated by the December 6, 1990, resolution is an unfair labor practice. [1993 MERC Lab Op 424, 432.]

However, when the MERC originally heard this case, it did not have the benefit of the standard offered in *Port Huron*. As a result, its decision was not based on the proper foundation. Consequently, it now makes perfect sense to allow the MERC the first opportunity to apply the new standard from *Port Huron*.

This conclusion is further buttressed by the fact that the MERC has been charged with the responsibility to see a case to resolution.

Rather, we read PERA and related state statutes as manifesting a clear legislative intent that, once a party to a public sector employment collective bargaining relationship invokes MERC's jurisdiction under PERA, that party's complaint should be resolved by MERC in accordance with the statutory processes. [*Detroit Fire Fighters Ass'n v Detroit*, 408 Mich 663, 685; 293 NW2d 278 (1980).]

III

The MERC did come to a resolution of this case before it was appealed to this Court, but that resolution did not apply the new standard. Because the MERC is in the position of factfinder and because it has the responsibility to resolve labor disputes in accordance with statutory process, I favor remanding the case to the MERC while retaining jurisdiction.

BRICKLEY, C.J., and WEAVER, J., concurred with RILEY, J.