NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0486n.06

Case No. 14-1502

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CATHERINE TOWN, | ) | **FILED** |
|  | ) | Jul 06, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| GENESEE COUNTY EMPLOYEES' | ) | MICHIGAN |
| RETIREMENT SYSTEM, | ) |  |
|  | ) |  |
| Defendant-Appellee. | ) |  |
|  | ) |  |

Before: BOGGS, SILER, and CLAY, Circuit Judges.

**SILER, Circuit Judge.** Plaintiff Catherine Town appeals the district court's grant of summary judgment in favor of Genesee County Employees' Retirement System (the Retirement System) and dismissal of Town's claims. For the reasons explained below, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

Town was employed by Genesee County (the County) as a Land Foreclosure Specialist and had worked for the County for approximately eighteen years. In 2010, she filed an application for disability retirement benefits with the Retirement Commission of Genesee County Employees' Retirement System (the Commission). The Retirement System is established under the authority of Mich. Comp. Laws § 46.12a and is a separate and distinct entity from the County. The Commission is responsible for determining whether an employee, including Town, is eligible for retirement disability benefits. The relevant Retirement ordinance provides:

> A Member, with 10 or more years of Credited Service, whom the Retirement Commission *finds to be totally and permanently incapacitated for duty* from any cause in the employ of his last Employer *may be retired* by the Commission upon application filed with the Commission by the member or his department head: *Provided, that after a medical examination of the Member, made by or under the direction of the medical director, the medical director certifies to the Retirement Commission (1) that the Member is mentally or physically totally incapacitated for duty in the employ of his last Employer, (2) that such incapacity will probably be permanent, and (3) that the Member should be retired.* Upon this Retirement he shall receive a Retirement Allowance provided in Section 30. In addition to the above requirements, the Member must apply for Social Security disability benefits and properly notify the Retirement Commission regarding the results of said application.

(Emphases added.)

In her initial application for benefits, under the section titled: "Give [a] full explanation of the nature and causes of your disability," Town wrote simply: "PPA," which stands for Primary Progressive Aphasia. Retirement System Administrator Debra Tocarchick contacted the medical director, Consulting Physicians, and it scheduled an appointment for Town with Wilbur J. Boike, M.D., a neurologist. Dr. Boike examined Town and found that "Town's neurological examination [was] absolutely normal. She has absolutely no basis whatsoever to suspect or diagnose any type of neurodegenerative disorder affecting language or cognition." Moreover, Dr. Boike determined that "I do not believe that there is any basis to determine that she is 'disabled'. I believe she could perform her normal work activities were she inclined to do so."

Shortly after her examination by Dr. Boike, Town emailed Tocarchick and expressed her displeasure with the way Dr. Boike conducted the examination. At the Commission's September 2010 meeting, it tabled Town's application and sent Town to another physician for a second opinion.

Town was referred to Gary L. Trock, M.D., who is a pediatric and general neurologist. Dr. Trock ultimately concluded, "I would not consider Ms. Town disabled from a physical or mental standpoint. In my opinion, Ms. Town does not have a work related disorder, and she can return to her former job." Dr. Trock noted that Town performed normally on most of the tests but scored abnormal on the Folstein mini-mental test, which Dr. Trock "expect[ed] . . . was not a valid attempt." Dr. Trock also noted that Town appeared to "voluntarily veer backwards" during one test, but shortly thereafter, she was able to catch her own bag easily before it tipped over.

After the examination, Town alleged that Dr. Trock might not be qualified to examine her because he is a pediatric neurologist, but Dr. Trock responded that he is board certified in neurology with a special competence in child neurology, meaning he is trained in both general and pediatric neurology.

Town was present at the Commission's November 2010 meeting. The Commission acknowledged the receipt of both physician reports and "deni[ed] the non-duty disability retirement of Catherine Town."

Later in November, Dr. Trock sent the Commission a follow-up letter concluding that, after reviewing additional records sent by Town, he remained confident that Town did not have Primary Progressive Aphasia. Dr. Boike indicated that, after reviewing the additional records, his opinion was also unaltered, and he did "not believe that Ms. Town has either primary progressive aphasia or a neurodegenerative disorder."

At the Commission's December 2010 meeting, it voted to close Town's case "unless she comes forward again with new and relevant medical information." Town then submitted a hand-written appeal of the Commission's denial of benefits and requested a hearing. After several

delays made at the request of Town's attorney, the Commission conducted a hearing on June 20, 2011.

At the hearing, Town's attorney provided the Commission with new medical opinions and indicated that Town may actually be suffering from "Hughes Syndrome," rather than Aphasia. Town's attorney was troubled that Drs. Boike and Trock failed to consider other problems that may have been producing Town's symptoms. Town provided the Commission with a number of medical records and other materials in support of her claim for benefits, including a letter from Hartford Life and Accident Insurance Co., approving her claim for long-term disability benefits.

Drs. Boike and Trock were again asked to reevaluate Town based on new medical information that Town may be suffering from "generalized anxiety" and "antiphospholipid antibody syndrome" (Hughes Syndrome). Dr. Boike's opinion was unchanged. Dr. Trock reaffirmed his original opinion that Town did not have Aphasia but indicated he deferred to a psychiatrist or psychologist regarding whether Town suffered from depression or Hughes Syndrome.

Based on Town's new records, revised assertions that she did not suffer from Aphasia but suffered instead from some other psychiatric syndrome, including Hughes Syndrome, and per her attorney's requests, Tocarchick contacted Consulting Physicians, who recommended Christian Schutte, Ph.D., a neuropsychologist. Dr. Schutte determined that Town's "presentation is not consistent with a dementia process and is more parsimonious with a psychiatric diagnosis." Moreover, while "[i]t may be difficult for her to return to her previous employment *at this time*" because Town "*apparently found it* very emotionally taxing . . . it is likely *she should be able to return to work*." (Emphases added.) Ultimately, Dr. Schutte concluded, "Ms. Town should not

be retired, but that she may have difficulty with performing her previous employment at the intensity she indicated in her treatment records . . . [but] [h]er duties may be reconsidered after she has been successfully treated."

At the Commission's next meeting, it considered Dr. Schutte's report and decided to send the report to the County, Town's employer, with a request for the County to address whether another job that was less psychiatrically taxing existed that could better accommodate Town. The County indicated that, based on Dr. Schutte's report, it was questionable whether Town was disabled and, because Town had not requested an accommodation under the Americans with Disabilities Act, it was under no obligation to consider an accommodation. However, the County noted that, even assuming Town was disabled, "no other job exists in her office that would provide a less 'psychiatrically taxing' or less 'psychologically overwhelming' atmosphere."

In December 2011, the Commission notified Town and her attorney that the Commission had again denied Town's non-duty disability retirement because all three examiners had concluded that Town was not disabled; Town had not submitted evidence that she applied for social security disability; and she had exhausted all methods pursuant to the Genesee County Retirement ordinance.

Town requested a rehearing and argued that Dr. Schutte used an improper standard for determining whether she was disabled. She complained that Dr. Schutte should have evaluated whether she could perform "in the same or similar position [she] held at the time of disability," not "some hypothetical job which does not exist." Town also questioned whether Dr. Schutte truly evaluated her from a "mental" rather than a physical perspective. Town's attorney also submitted a denial letter from the Social Security Administration.

Despite the informal December 2011 denial, the Commission sent Town a letter officially denying her appeal on February 7, 2012. Town renewed her request for a rehearing.

In March 2012, the Commission granted a rehearing on Town's claim for benefits. In April 2012, Town provided the Commission with a record of an award of social security benefits. Notably, the award of social security benefits was based, at least in part, on a diagnosis of Hughes Syndrome and Primary Progressive Aphasia. Town also supplied the Commission with additional medical records, including diagnostic testing showing the possibility of Hughes Syndrome.

In a May 2012 letter, Dr. Schutte provided the Commission with a supplemental report. He considered a document from Hartford Life and Accident Insurance Co., statements from two of Town's doctors, a document from the Social Security Administration, a vocational assessment, and additional treatment records. Dr. Schutte concluded:

> From a neuropsychological point of view there was no evidence of aphasia, cognitive deficits and Ms. Town denied symptoms of Major Depression or Generalized Anxiety. Thus, review of additional records does not change the opinion of the September 24, 2011 neuropsychological evaluation, as there were no additional records to support difficulties identified as disabling, including "severe depression", Generalized Anxiety or cognitive deficits from neuropsychological point of view.

Town again objected that Dr. Schutte's opinion was not based on the correct standard of disability, and his evaluation was not a correct "mental" evaluation.

The Commission, through Consulting Physicians, next scheduled Town an appointment with Jamal Hammoud, M.D, a board-certified doctor in internal medicine. After a review of Town's records and an examination of Town, Dr. Hammoud concluded that "I do not see any medical or endocrine disorder [i.e. Hughes Syndrome] that would prevent her from working and

I do not see that she has any speech disorder." However, Dr. Hammoud concluded that Town was disabled and should retire because Town:

> did have a stressful job and based on [his] evaluation, it seemed that the patient was very anxious and [he] agree[d] that she has generalized anxiety. That will prevent her from working in a stressful job . . . If there is any other job not so stressful, she could handle it, but based on the description of the job that was given to me in writing from the patient, I do not think she can perform her job and she should actually retire.

At its September 2012 meeting, the Commission expressed concern that Dr. Hammoud did not base his disability determination on Hughes Syndrome, which was the main reason he was asked to evaluate Town. At its October 2012 meeting, the Commission heard arguments from Town's attorney, noted its ability to view each examiner's assessment with the same weight, and reaffirmed its denial of Town's application for benefits.

Town filed suit in state court against the County and Retirement System asserting: (1) "improper denial of disability retirement benefits" (Count I); (2) violation of her due-process rights under 42 U.S.C. § 1983 and the Michigan Constitution (Count II); and (3) discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1102 (Count III).

The County removed the suit to federal court. Later, the parties filed a stipulation of dismissal as to Town's claims against the County. The district court denied Town's motion for summary judgment, granted the Retirement System's motion for summary judgment, and dismissed the case.

While Town asserted three separate counts in her complaint, the Retirement System's motion for summary judgment, Town's motion for summary judgment and response, as well as the district court's order, only appear to address Count I of Town's complaint—that the

Retirement System improperly denied Town's claim for benefits. Town's appellate brief and the Retirement System's response brief similarly refer only to the issue of whether the Retirement System improperly denied Town's claim for benefits. To the extent Town attempts to assert other claims on appeal, she has waived such arguments by not raising them in her brief. *See Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000).

### STANDARD OF REVIEW

The parties agree that this is a claim to which the district court exercised supplemental jurisdiction, and, therefore, Michigan law applies. *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989); *Exxon Mobil Corp. v. Fenelon*, 76 F. App'x 581, 587 (6th Cir. 2003) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." (internal quotation marks omitted)). The parties also agree that the decision of a Michigan governmental retirement commission is reviewed as an administrative appeal upon motions for summary judgment. *See Flanagan v. Macomb Cnty. Emps. Ret. Sys.*, No. 2010-003943-CK, 2012 WL 5290308 at *3 (Mich. Ct. App. Oct. 25, 2012).

According to the Michigan Supreme Court, a trial court:

> must affirm [an administrative decision] if it conforms to the law, and if competent, material, and substantial evidence supports it. A reviewing court is not at liberty to substitute its own judgment for a decision of the [Commission] that is supported with substantial evidence.

*Hodge v. U.S. Sec. Assoc., Inc.*, 859 N.W.2d 683, 685 (Mich. 2015) (internal quotation marks and citations omitted). "Only agency decisions that are contrary to law, . . . arbitrary, capricious, or a clear abuse of discretion, [and not] supported by competent, material and substantial evidence on the whole record will be overturned." *McDole v. City of Saginaw*, No. 10-010637-

NZ, 2012 WL 1698380 at *2 (Mich. Ct. App. May 15, 2012) (internal quotation marks omitted) (emphasis added). We review de novo the district court's determination of whether the state agency's judgment was arbitrary or capricious, or was not supported by substantial evidence. *See, e.g.*, *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989).

## ANALYSIS

Based on Section 28 of the relevant Genesee County ordinance the district court determined that to qualify for retirement benefits, Town needed: (1) to have been a member with ten or more years of credited service; and (2) the Commission needed to find that Town was "totally and permanently incapacitated for duty from any cause in the employ of [her] last Employer." Moreover, only after a medical examination of Town, made by or under the direction of the medical director, certified to the Commission that: (1) Town was "mentally or physically totally incapacitated for duty in the employ of her last Employer"; (2) "that such incapacity will probably be permanent"; and (3) that she should be retired, could Town receive benefits. It is undisputed that Town was an employee of the County for more than ten years and that she was evaluated by medical examiners at the direction of the medical director. However, it is disputed whether the Commission should have found Town totally and permanently incapacitated.[1]

Town's extensive appellate brief consists of six arguments: (1) Town suffers from a mental disability; (2) Dr. Schutte applied an improper standard to determine disability; (3) Dr. Schutte was not made aware that no other jobs were available that were less psychologically strenuous; (4) Dr. Schutte was not a physician; (5) the Commission should have accepted Dr.

---

[1] It is also undisputed that Town applied for and received social security benefits. Application for social security benefits is a requirement under the relevant ordinance. However, it appears from the record that Town did not supply documentation of her social security application until late 2011, over a year after initially applying for benefits.

Hammoud's finding of disability; and (6) the Commission failed to consider all of the available evidence. The question is whether any of these assertions can overcome the substantial evidence standard. *VanZandt v. State Emps. Ret. Sys.*, 701 N.W.2d 214, 218 (Mich. Ct. App. 2005). We conclude that they do not.

First, Town asserts that she suffers from a mental condition and since the Retirement System does not require that she identify a specific condition, the Commission should have found her disabled for mental reasons. This argument ignores the factual record of this case and makes light of the level of deference owed to the Commission's findings of fact. We may not substitute our own judgment for that of the Commission. *VanZandt*, 701 N.W.2d at 218.

Town insists that "[e]very doctor who examined Town recognized that there was a significant mental component to her condition." When Town first applied for disability benefits, she did not maintain she had any mental problems. Instead, she insisted she suffered solely from Aphasia. Town reported that she struggled with "speech and mental coordination," not general mental or anxiety issues. Thus, Dr. Boike would have had no reason to guess that Town suffered from mental or psychological problems. Town was upset with Dr. Boike's evaluation not because she initially thought he failed to examine her for mental conditions, but because she was displeased with his "sarcastic remarks" and "poor quality." In October 2010, when Dr. Trock, *the second examiner*, determined that Town was not disabled, Town complained that Dr. Trock was a pediatric neurologist and was therefore not qualified on that basis. At that time, Town still did not complain that she experienced any mental problems.

In fact, Town did not switch course as to the reason for her disability until she received a hearing in June 2011, roughly a year after Town initially applied for disability benefits. Thus, that Drs. Boike and Trock did not evaluate Town for mental or psychological problems does not

serve to undermine their medical findings of non-disability. Moreover, after her new assertion that she may be suffering from Hughes Syndrome, the Commission again gave Town the benefit of the doubt and sent her to a *neuropsychologist*, Dr. Schutte. Dr. Schutte similarly found Town was not disabled and noted that Town *denied* symptoms of Major Depression or Generalized Anxiety. Again, when Town was unhappy with Dr. Schutte's determination, the Commission sent Town to a *fourth examiner*, who finally determined that Town was disabled.

Town carried the burden to prove her disability. She switched course as to the cause of her disability over a year after applying for benefits. Three of four examiners determined that Town was not disabled. While Town was not *required* to label her condition, she repeatedly *chose* to assert disability based on specific disorders, and all four of the medical examiners declined to diagnosis Town with Aphasia or Hughes Syndrome. Accordingly, Town's first reason for reversal is without merit.

Next, Town insists that Dr. Schutte did not apply the "job specific" standard of disability; that is, Dr. Schutte never based his disability determination on whether Town could continue to perform her most recent job, not whether she could continue to work more generally. In support of this position, Town cites the Retirement System attorney's statement during a closed session that Town "may reasonably be retired" based on Dr. Schutte's opinion that Town could not perform her current duties. She also cites to the fact that the County determined that no psychiatrically less taxing jobs were currently available. Town ignores the fact that Dr. Schutte expressly indicated that Town's condition was not permanent because it was "treatable with adequate engagement by the patient."[2] That Town's condition is likely permanent is a specific

---

[2] Dr. Schutte indicated that "Town should be able to return to work in a capacity that she does not find psychologically overwhelming." Yet, he also commented on the difficulties with her treatment based on her refusal to consider her psychiatric problems. Ultimately, this does not change the conclusion that if Town were cooperative and treated, her condition would not be permanent, and therefore, she cannot be considered disabled.

requirement of a finding of disability. Thus, even assuming Dr. Schutte should have been provided with a job-specific description, his finding of non-disability would stand regardless of whether he considered a general or specific job.

Town's next argument is related. She maintains that the Commission should have made Dr. Schutte aware that Town could not transfer to a psychologically less taxing job because none was available. This argument fails for the same reason as Town's second argument fails. Dr. Schutte's determination of non-disability was also based on the fact that Town's problems were not permanent, as is required under the ordinance. Moreover, Town belittles the fact that she spent over a year insisting that she suffered from Aphasia and that two physicians had already concluded she was not disabled. The Commission was able to consider not just Dr. Schutte's evaluation, but also the other examiners' opinions. Moreover, when Dr. Schutte reconsidered his analysis based on the additional documentation submitted by Town, he expressly noted that "[r]eview of additional records indicates a variety of diagnoses that Ms. Town was apparently on disability for, including psychiatric issues and cognitive issues, which were not objectively shown on the neuropsychological examination completed on September 24, 2011." Town specifically denied symptoms of Major Depression or Generalized Anxiety.

Town next maintains that the Commission erred by considering Dr. Schutte's opinion because he is not a "physician" but instead is a Ph.D. She cites the County ordinance § 12(f), which indicates that the Commission "shall appoint as medical director a physician." The relevant County ordinance indicates that the Commission may only find disability after "a medical examination of the Member, *made by or under the direction of the medical director*." (Emphasis added.) Town claims that the Commission's reliance on Dr. Schutte's opinion is contrary to the County ordinance.

- 12 -

In support of her position, Town also cites the County Retirement System Disability Retirement Policy Procedures, which states:

> the Commission shall adopt its Acceptance Resolution (Form D1S.6) which acknowledges receipt of the application and designates its Medical Director, or some other physician recommended by its Medical Director, to serve as the Medical Director . . . . The Member is examined by the Medical Director or a physician designated by and under the direction of the Medical Director.

This policy is not a county ordinance, and, thus, it is not law. Town further relies upon *In re Storm*, 514 N.W.2d 538, 541 (Mich. Ct. App. 1994), for the proposition that "[w]here the language of a statute is clear, there is no need for interpretation; the statute must be applied as written." However, the Michigan Supreme Court overruled *In re Storm* to the extent it conflicted with its new holding that an association may "show[] that the parties had a meeting of the minds with respect to . . . new terms or conditions and that the past practice was so prevalent and widely accepted that there was an agreement to modify the contract." *Detroit Police Officers Ass'n v. City of Detroit*, 551 N.W.2d 349, 350, n.2 (Mich. 1996).

Town's argument arises out of her misunderstanding of the term "medical director" as it was used throughout the course of her case. The record in this case indicates that the medical director was Consulting Physicians, who recommended Dr. Schutte to conduct a medical examination in accordance with the ordinance. In fact, in a letter to Dr. Schutte, Tocarchick clearly noted: "The Genesee County Retirement Commission requested that its *Medical Director, Consulting Physicians*, recommend an appropriate professional to evaluate Ms. Town to make this determination." (Emphasis added.) An email sent to Town indicates, "Consulting Physician[s] responded with a recommendation for a Neuropsychologist who would examine and test for cognitive function impairments." Of course, Consulting Physicians is not itself a "physician," and Town mentions this in her brief.

However, Consulting Physicians was so widely accepted as the medical director in this case, there was a meeting of the minds as to its role between the Retirement System and Town. *See Detroit Police Officers Ass'n*, 551 N.W.2d at 350. The Commission relied on Consulting Physicians as a "medical director" throughout the course of this case with no objection by Town or her attorney. According to a letter from Tocarchick to the Practice Manager of Consulting Physicians,

> The Genesee County Employees' Retirement System *uses Consulting Physician[s] Group as its Medical Director* to review and evaluate medical evidence and make recommendations regarding applications for disability retirement. Catherine Town was evaluated by two separate neurologists recommended by Consulting Physicians in connection with her disability, Dr. Wilber J. Boike . . . and Dr. Gary Trock.

(Emphasis added.) The Retirement System also used Consulting Physicians as the medical director in association with Dr. Hammoud, whose opinion Town obviously champions. Consulting Physicians even mailed Town a confirmation that she would not be charged for her visit with Dr. Hammoud. It is true that the Retirement System was sloppy with its terminology, as it also referred to Drs. Boike, Trock, and Schutte as the Commission's "medical director," but there is an abundance of documentation from the record indicating that it was the Commission's practice to ask its legally ordained medical director, Consulting Physicians, to refer a medical examiner to review Town's claim for disability. The County Ordinance at issue provides: "*after a medical examination* of the Member, made by or *under the direction of the medical director. . . .*" (Emphasis added.) The Retirement System's repeated practice—of seeking a referral from Consulting Physicians and using the referral's opinion as reported from Consulting Physicians—was never questioned by Town until she filed a complaint against the Retirement System. Furthermore, Town has not cited any proof that this practice has ever been challenged

in the past by other members. Thus, Town cannot retrospectively complain that there was no past practice or no meeting of the minds concerning the method the Commission used to select all four of the doctors who examined Town.

Moreover, the standard of review in this case is a deferential one. Even if we were inclined to find that the Commission erred by considering the opinion of Dr. Schutte, a Ph.D. rather than an M.D., the evidence before the Commission would be enough to support the Commission's decision of non-disability. Thus, any error would be harmless.

Next, Town argues that the Commission "violated its own practices by disqualifying the certification of Town's disability from its own Medical Director on the basis that Jamal Hammoud, M.D. lacked the experience, training, and background to issue his certification, without obtaining any information regarding Jamal Hammoud's experience, training, or background." This statement has no footing in the record of this case. After Town had already been reviewed by three medical examiners and, after the Commission had already repeatedly denied Town benefits, the Commission determined that Town should be reexamined "in light of Ms. Town's recent diagnosis of Hughes Syndrome." It was very clear that Town was scheduled for reexamination to determine whether she was disabled based on Hughes Syndrome. A letter from Town's attorney states: "Catherine Town has no objections to having Jamal Hammoud, MD evaluate her *Hughes Syndrome condition*." (Emphasis added.) Dr. Hammoud examined Town and determined that "Based on my evaluation and review of records, I do *not* see any *medical or endocrine disorder that would prevent her from working*." (Emphasis added.) Curiously, Dr. Hammoud briefly concluded that, due to Town's generalized anxiety and self-described stressful job, Town was disabled.

The Commission's primary concern with Dr. Hammoud's report was not his qualifications—although Dr. Hammoud is board certified in internal medicine, not psychiatry—but his finding of disability based on generalized anxiety when Town was specifically referred to Dr. Hammoud based on her claim of Hughes Syndrome. The Commission repeatedly sought to have Town examined based on her alleged conditions, and the Commission went "to great lengths" so that Town could be examined by the appropriate physician. Ultimately, we cannot substitute our own judgment for that of the Commission, particularly considering that the Commission's decision was thorough and based on substantial evidence. *See VanZandt*, 701 N.W.2d at 218. The relevant County ordinance states that Town "*may* be retired by the Commission upon application filed with the Commission by the member or his department head," so long as the conditions are met, and thus, whether to retire a member is up to the discretion of the Commission, so long as its decision is not contrary to the law or the substantial evidence. *See id.*

Finally, Town claims that the Commission failed to consider all available evidence. In support of her argument, Town lists all of the evidence from her own doctors, Social Security Administration, and Hartford Life and Accident Insurance Company. As already emphasized, the Commission's decision need only be supported by substantial evidence. Its opinion is not arbitrary and capricious merely because it chose to believe one report over another. Moreover, much of the evidence cited by Town is contradicted by other evidence in the record. The Hartford letter approving Town for long term disability benefits, for example, "encourage[s] [Town] to return to work as soon as possible." This does not indicate that Hartford considered Town permanently disabled. The social security disability finding was based, at least in part, on

a diagnosis of Hughes Syndrome and Primary Progressive Aphasia. The four examiners in this

case all rejected such a diagnosis.

**AFFIRMED.**