ORGANIZATION OF SCHOOL ADMINISTRATORS AND SUPERVISORS,
AFSA, AFL-CIO v DETROIT BOARD OF EDUCATION

Docket No. 192852. Submitted May 13, 1997, at Detroit. Decided March 27,
1998, at 9:05 A.M. Leave to appeal sought.

The Organization of School Administrators and Supervisors, AFSA,
AFL-CIO (OSAS), the bargaining agent for supervisors and adminis-
trators employed by the Detroit Board of Education, including
those responsible for the supervision of the teachers in the voca-
tional-technical and adult basic education programs, brought an
unfair labor practice charge against the board, alleging violations of
the public employment relations act, MCL 423.201 et seq.; MSA
17.455(1) et seq., with regard to the respondent's limiting the work
hours and changing the compensation of certain OSAS members. A
hearing referee recommended that the charges be dismissed. The
Michigan Employment Relations Commission (MERC) affirmed the
hearing referee's conclusion that the respondent did not violate its
duty to bargain, but for different reasons. The OSAS appealed, and
the respondent cross appealed.

The Court of Appeals held:

The MERC did not err in finding no unfair labor practice regarding
respondent's limiting the work hours of the adult education depart-
ment heads and allegedly changing their compensation. The MERC's
finding that the adult education department heads' evening work
was not overtime must be vacated. The MERC's conclusion that the
respondent had no duty to bargain regarding the reduction of hours
of the vocational-technical administrators' evening work must be
affirmed. The matter must be remanded in part to allow the MERC to
address anew the charge based on a unilateral change in the
method of compensating the vocational-technical administrators'
evening work and provide a clear explanation for its decision that
there was no unfair labor practice with regard to that charge. The
MERC's finding that the vocational-technical administrators' evening
hours were not overtime must be affirmed.

1. The MERC did not err in determining that the parties' collective
bargaining agreement covered the issue concerning the hours of
the vocational-technical administrators, that the agreement granted
the respondent authority to set hours when necessary, and that,

therefore, no additional bargaining was required. The MERC did not err in concluding that the respondent had no duty to bargain with respect to the issue of capping the vocational-technical administrators' evening work at twenty-four hours biweekly.

2. The evidence does not support the OSAS's claims that the adult education department heads' rate of compensation for overtime, if authorized, was unilaterally modified by the respondent or that the respondent had implemented a change in their rate of pay.

3. The MERC did not clearly explain its conclusion that there was no unfair labor practice with regard to the respondent's change in the method of compensation for the vocational-technical administrators from a per diem basis to an hourly basis.

4. The MERC's finding that the adult education department heads' evening work was not overtime hours must be vacated because the OSAS's counsel conceded during oral argument on appeal that such work was an extension of their normal work and thus overtime.

5. Competent, material, and substantial evidence on the whole record supports the MERC's finding that the evening assignments of the vocational-technical administrators were within the scope of the work performed by the bargaining unit and were covered by the contract.

Affirmed in part, vacated in part, and remanded in part.

JANSEN, J., dissenting, stated, on the basis of the following findings, that the respondent did commit unfair labor practices and the matter should be reversed and remanded to the MERC for it to fashion an appropriate remedy.

1. The MERC erred in interpreting the collective bargaining agreement to mean that the OSAS waived its right to demand bargaining regarding changes in the hours of jobs within the bargaining unit. The agreement permits the respondent to set a fixed workday or schedule for the administrators and supervisors, but says nothing about reducing the number of hours worked. The OSAS did not waive the right to bargain over the respondent's unilateral reduction in hours and the respondent committed an unfair labor practice in unilaterally changing the hours without first bargaining with the OSAS.

2. The MERC did not err in finding that the assignments at issue were within the scope of the work performed by the bargaining unit and covered by the contract. The MERC did not err in finding that both the adult education and vocational education administrators had two separate jobs and that the administrators' evening jobs constituted bargaining unit work covered by the contract. The MERC did not err in finding that the evening hours did not constitute overtime hours.

3. The respondent committed an unfair labor practice when it
unilaterally altered the method of compensation. The alteration
directly affected wages and the respondent had a statutory duty to
bargain in that regard. There was no waiver by the union or a ful-
fillment of the respondent's statutory duty to bargain.

1. LABOR RELATIONS — PUBLIC EMPLOYERS — DUTY TO BARGAIN.

Public employers have a duty to bargain over wages, hours, and other
terms and conditions of employment; a public employer commits
an unfair labor practice if, before bargaining, it unilaterally alters
or modifies a term or condition of employment, unless the
employer has fulfilled its statutory obligation or has been freed
from it (MCL 423.215[1]; MSA 17.455[15][1]).

2. LABOR RELATIONS — MANDATORY SUBJECTS OF BARGAINING.

A two-step inquiry is used to determine whether an employer must
bargain before altering a mandatory subject of bargaining: Is the
issue the union seeks to negotiate covered by or contained in the
collective bargaining agreement? If not, did the union somehow
relinquish its right to bargain?; a waiver occurs where a union
knowingly and voluntarily relinquishes its right to bargain about a
matter; where the matter is covered by the collective bargaining
agreement, the union has exercised its bargaining right and the
question of waiver is irrelevant.

*Mark H. Cousens*, for the charging party.

*Riley and Roumell, P.C.* (by *George T. Roumell, Jr.*,
and *Gregory T. Schultz*), for the respondent.

Before: MARKEY, P.J., and JANSEN and WHITE, JJ.

WHITE, J. The charging party, Organization of
School Administrators and Supervisors, AFSA, AFL-
CIO (OSAS), appeals from an order of the Michigan
Employment Relations Commission (MERC)[1] dis-
missing the unfair labor practice charges it brought
against respondent, Detroit Board of Education. The
OSAS argues that the MERC erred in concluding that
respondent did not violate its statutory duty to bar-

---

[1] The order is dated February 2, 1996.

gain by unilaterally reducing rates of pay and hours of work for certain school administrators and that the MERC erred in failing to exercise its statutory jurisdiction and deferring to arbitration the OSAS's charge relating to respondent's unilateral reduction of rates of pay. Respondent cross appeals from the same order, arguing that the MERC erred in finding that the hours at issue were not overtime.

We conclude that the MERC did not err in finding no unfair labor practice with regard to respondent's limiting the work hours of the adult education department heads and allegedly changing their compensation. However, we vacate the MERC's finding that the adult education department heads' evening work was not overtime, because the OSAS's counsel conceded the contrary during oral argument before this Court.[2] We affirm the MERC's conclusion that respondent had no duty to bargain regarding the reduction of hours of the vocational-technical administrators' evening work. Regarding the MERC's disposition of the OSAS's charge based on a unilateral change in the method of compensating the vocational-technical administrators' evening work, from a per diem to hourly rate, we remand with instructions that the MERC address this issue anew and provide a clear explanation for its decision that there was no unfair labor practice. Regarding respondent's cross appeal, we conclude

---

[2] During oral argument before this Court, the OSAS's counsel stated that, in contrast to the vocational-technical administrators, the adult education department heads' evening hours were an extension of the work they performed during the day. The OSAS's counsel further stated that the union did not contest respondent's right to determine that the adult education department heads could not work in the evening without permission. We thus disagree with the dissenting opinion on this issue, although we agree that the OSAS asserts that there was a unilateral change in the compensation for overtime. This claim is addressed in part III.

that the MERC's finding that the vocational-technical administrators' evening hours were not overtime was supported by competent, material, and substantial evidence on the whole record.

I

Respondent operates an adult education program consisting of a vocational-technical training component, which teaches job skills, and an adult basic education component, which teaches basic skills such as reading and math, leading to a high school equivalency diploma. The adult basic education courses are taught principally at night, at numerous sites throughout the city of Detroit. The vocational-technical courses are taught at respondent's three vocational centers.

The OSAS is the bargaining agent for supervisors and administrators employed by respondent, including those responsible for supervision of the teachers in the vocational-technical and adult basic education programs. At pertinent times, there were three principals responsible for the vocational-technical program; seven department heads responsible for the adult basic education program; and two central office administrators responsible for the overall operation of both programs.

The collective bargaining agreement in effect at the time of this dispute covered the period between July 1, 1992, and June 30, 1994. In December 1993, the state Legislature reorganized school funding, cutting adult education funding in Detroit by about fifty-three percent and making student eligibility more stringent.

On January 7, 1994, Dr. Arthur Carter, respondent's deputy superintendent of government relations and

community services, who was responsible for the adult education program, sent a memo to the directors of adult education stating that the budget had been reduced, projections indicated a deficit may exist in the current year in adult education, and there would be further reductions the next year. The memo stated that effective January 20, 1994, there would be a fifty percent reduction in hours for all administrative staff working for adult education in an additional assignment capacity and that all such staff would be paid at the hourly department-head rate. After the OSAS requested bargaining, the parties met on February 15, 1994. After the meeting, Dr. Carter rescinded his January memo. He issued a new memo on February 17, 1994, stating that it superseded "all previous communications regarding administrative schedules and working hours." The February memo stated that effective February 28, 1994:

> 1. All vocational/technical administrators will be paid for no more than 24 hours biweekly at the department head rate. Schedules should be adjusted to allow for sufficient administrative coverage. . . .
>
>         \*     \*     \*
>
> 3. No administrator or teacher in adult education will be paid for overtime unless approved, in writing, by me. I strongly discourage all overtime.

The parties met again on March 2, 1994, and discussed the issue of "overtime" for the vocational-technical administrators. No resolution was reached, and the parties agreed to meet again.

The OSAS filed an unfair labor practice charge against respondent on March 4, 1994, alleging violations of the public employment relations act (PERA),

MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* The charge stated that the vocational-technical administrators worked on a full-time basis as building officials, while working part-time as administrators of the evening vocational-technical program, and that "[s]chedules have typically required these administrators to supervise programs on a daily basis, usually approaching 24 hours per week." The charge further stated that the OSAS and the board had been bargaining to replace an agreement scheduled to expire June 30, 1994, and that issues discussed had included hours to be worked and rates of pay for vocational-technical administrators. The charge stated that the parties were involved in preliminary bargaining and that neither party had suggested that an impasse existed. Finally, the charge stated, in part:

7. Notwithstanding the pendency of bargaining, and the absence of any impasse, on February 17, 1994 the Board unilaterally capped the number of hours a vocational/technical administrator might work. The change was made without prior consultation with or agreement of the Union.

8. The unilateral change violates the Act for the reason that:

A. The change was unilateral. The Union neither approved nor consented to the modification.

B. The change was commenced absent impasse or any warning that the change might be imposed.

C. The change was imposed without initiating or exhausting dispute resolution procedures available under the Act.

D. The change was initiated although the Union had demanded bargaining on the issue, the parties had not reached a conclusion to that process.

The OSAS's unfair labor charge did not mention the adult education department heads.

The parties met again on April 27, 1994. Subsequently, the parties met for the purpose of negotiating the successor collective bargaining agreement on May 10, 19, 24, and June 22, 1994. The OSAS did not raise the issue of overtime or supplemental pay at any of the May and June meetings. The parties reached a settlement on the successor agreement on June 22, 1994, and a new contract was ratified, which did not contain any modifications regarding the issues presented here.

Respondent filed its answer on October 7, 1994.[3] Respondent denied that bargaining was in a preliminary state, stating that "a new agreement has been reached covering all issues between the parties; that any claim here has been waived by the Charging Party, having had the opportunity to bargain concerning same."[4] Respondent denied that it had unilaterally capped the vocational-technical administrators' evening hours, stating that it had bargained "even prior to bargaining over negotiations of the new contract [and] that all issues between the parties have been settled." Respondent denied that the change in hours violated § 10 of the PERA, MCL 423.210; MSA 17.455(10), stating that it was "exercising its right to determine when, how, and where delivery of services should be made and to determine and control overtime."

---

[3] We note that respondent's answer responded to paragraphs ten through thirteen of the OSAS's charge. However the copy of the OSAS's charge in the record is only nine paragraphs long, and the docket printout does not indicate it ever amended its charge. Respondent's answer also refers to a "first" and "second" violation, while the OSAS's charge refers to only one.

[4] This particular waiver argument was not addressed by the MERC, but was by the hearing referee. See infra, pp 62-63.

A three-day hearing was held, after which the hearing referee recommended that the charges be dismissed in their entirety:

> The question presented here is whether an Employer may change or eliminate supplemental employment without first bargaining to impasse or agreement with a Union representing these employees in their regular assigned employment.
>
> It is concluded that the Detroit Board of Education had the right to assign, reassign or eliminate additional overtime, supplemental (or by whatever terminology) assignments in the Adult Education Program without bargaining with the Charging Party to impasse or agreement. These assignments are not the bargaining unit work that is contemplated in the collective bargaining agreement. There was no impact on bargaining unit work.
>
> *          *          *
>
> The Employer met and bargained the impact of its decision. The Charging Party had ample opportunity to discuss these events during the period of negotiations for a successor collective bargaining agreement, but chose not to do so because, as the Union states, it would have been futile. Whether or not the Employer met individually with the employees affected by the additional work cuts is immaterial, as the subject matter is not a mandatory subject of bargaining.

The MERC affirmed the hearing referee's conclusion that respondent did not violate its duty to bargain, but for different reasons:

> First, we disagree with the Administrative Law Judge that these assignments fell into the category of "overtime." Both the adult basic education administrators and the vocational education administrators had two separate jobs. First, they administered Respondent's daytime adult education or vocational education programs, for which they were paid a salary. Secondly, they administered Respondent's evening

adult education programs. The adult basic education administrators were paid an hourly rate for their second job. The vocational education administrators were paid on a per diem basis.

We also disagree with the Administrative Law Judge that the administrators' evening jobs did not constitute bargaining unit work. This work clearly fell within the scope of the work performed by the bargaining unit and covered by the contract. Moreover, it was treated as such by the parties, as exemplified by the fact that Respondent gave Charging Party notice of its proposed actions. The fact that the evening programs were administered by the same administrators who supervised the daytime programs is not relevant to the question of whether the work constituted bargaining unit work. . . .

However, we agree with the Administrative Law Judge's ultimate conclusion that Respondent had no duty to bargain. We find that Section 9.0 of the parties' 1992-1994 contract waived Charging Party's right to demand bargaining over changes in the hours of jobs within the unit. In this case, the hours of the vocational education administrators' evening jobs were reduced. The evening jobs of the adult basic education administrators were merged into their daytime jobs, so that time worked in the evening reduced the number of hours worked during the day. In both cases, these actions were explicitly authorized by the language of Section 9.0 which states, "It is understood that this provision does not preclude the setting of hours by the Board or the General Superintendent when necessary . . . . "

In addition to reducing the hours of both groups, the Respondent also changed the method of compensating vocational education administrators for their evening work. Prior to March 2, 1994, the vocational education administrators were paid on a per diem basis, whereas after this date they were paid on an hourly basis. However, according to Charging Party, the per diem rate paid to vocational education administrators for their evening work is set out in the parties' contract. Therefore, the dispute constitutes a bona fide dispute over whether this provision of the contract was breached by the change in the method of compensation.

Under these circumstances, the dispute should be resolved through the parties' grievance arbitration mechanism. . . .

The OSAS filed a motion for reconsideration, which the MERC denied by stating in pertinent part:

[W]e disagree with Charging Party that in concluding that the dispute over the change in the method of paying vocational education administrators constituted a bona fide dispute over contract interpretation we "deferred the matter to arbitration" contrary to *Detroit Fire Fighters v Detroit*, 408 Mich 663 [293 NW2d 278] (1980). Rather, we simply found that no unfair labor practice was committed under these circumstances.

This appeal ensued.

II

The OSAS first argues that the MERC erred in concluding that respondent did not violate its statutory duty to bargain by unilaterally reducing hours of work and rates of pay for certain school administrators.

Appellate review of a MERC decision is limited. *Detroit Police Officers Ass'n v Detroit*, 212 Mich App 383, 388; 538 NW2d 37 (1995), aff'd 452 Mich 339 (1996). Legal rulings of an administrative agency are set aside if they are affected by a substantial and material error of law; factual findings of the MERC are conclusive if supported by competent, material, and substantial evidence on the whole record. MCL 423.216(e); MSA 17.455(16)(e); Const 1963, art 6, § 28; *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority*, 437 Mich 441, 450; 473 NW2d 249 (1991).

The party asserting a claim under the PERA has the burden of establishing an unfair labor practice. MCL

423.210; MSA 17.455(10). Public employers have a duty to bargain over wages, hours, and other terms and conditions of employment. MCL 423.215(1); MSA 17.455(15)(1). Under the PERA, an employer commits an unfair labor practice if, before bargaining, it unilaterally alters or modifies a term or condition of employment, unless the employer has fulfilled its statutory obligation or has been freed from it. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 317; 550 NW2d 228 (1996).

The procedure for determining whether an employer must bargain before altering a mandatory subject of bargaining involves a two-step analysis: Is the issue the union seeks to negotiate covered by or contained in the collective bargaining agreement? If not, did the union somehow relinquish its right to bargain? *Id.* at 322, n 16, citing *Dep't of Navy v Federal Labor Relations Authority*, 295 US App DC 239, 252; 962 F2d 48 (1992). " 'A waiver occurs when a union knowingly and voluntarily *relinquishes* its right to bargain about a matter; but where the matter is covered by the collective bargaining agreement, the union *has exercised* its bargaining right and the question of waiver is irrelevant.' " *Port Huron Ed Ass'n*, *supra* at 319, quoting *Dep't of Navy*, *supra* at 248.

> "Indeed, the difference between the two concepts goes to the structural heart of labor law. When parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. Because of the fundamental policy of freedom of contract, the parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the Authority, the National Labor Relations Board or the courts to inter-

fere with the parties' choice. . . . On the other hand, when a
union *waives* its right to bargain about a particular matter,
it surrenders the opportunity to create a set of contractual
rules that bind the employer, and instead cedes full discre-
tion to the employer on that matter. For that reason, the
courts require 'clear and unmistakable' evidence of waiver
and have tended to construe waivers narrowly." [*Port
Huron Ed Ass'n, supra* at 319, quoting *Dep't of Navy, supra*
at 248.]

A

Section 9.0 of the collective bargaining agreement
states:

9.0 HOURS OF WORK

In order to attain ultimate efficiency in the operation of
the Detroit Public Schools and to provide the best possible
educational program to the pupils served thereby, it is
essential for administrative and supervisory personnel to
work a schedule which reasonably permits the flexibility
necessary for the achievement of such goals. Such a sched-
ule may, at times, involve work in and out of the school
building and, at times, frequently outside the regular school
day. The professional discretion of good administrators and
supervisors in scheduling their hours of work shall be
respected insofar as such discretion is reasonable and is
consistent with the school program and its aforestated
aims. Professional discretion may be denied for good and
sufficient reason. It is understood that this provision does
not preclude the setting of hours by the Board or the Gen-
eral Superintendent when necessary, and is not intended to
supersede the requirements of any leave policy. In instances
where the General Superintendent or Administrative Heads
have established regular work hours, prior approval for any
deviation by administrators and supervisors is required.

We again observe that the hours issue we consider
concerns only the vocational-technical administrators,
because the OSAS's counsel conceded during oral argu-

ment that the adult-education department heads' evening work was overtime and that respondent could properly limit these hours.

B

We conclude that the MERC did not err as a matter of law in interpreting § 9.0. Section 9.0 states a general principle of professional discretion regarding hours, but recognizes that the board or general superintendent may set work hours when necessary, and that there might be instances where the general superintendent or administrative heads set hours. There was no testimony that, before this dispute, the vocational-technical administrators' evening hours were ever the subject of bargaining. Thus, the MERC did not err in concluding that the subject was covered by § 9.0 and that § 9.0 granted the board or general superintendent the authority to set hours when necessary and therefore no additional bargaining was required.

That § 9.0 covered the issue and stated a general principle of professional discretion subject to respondent's overriding right to set hours is also supported by (1) the language of § 9.0, including its title, "Hours of Work"; (2) the statement of the OSAS's counsel during oral argument, in response to a question regarding how hours had been set before this dispute, that the hours were "set by management" and the union did not object to the number of hours originally assigned; (3) the testimony of Dr. Kimberly Peoples, director of the adult education program at the Golightly Career and Technical Center from 1985 to 1994, that from 1985 to 1992 she worked two evenings a week, i.e., about twelve hours weekly, on the recommendation

of the administration, and in 1992 increased her hours to four evenings a week, when the adult education program was going through a restructuring; and (4) the testimony of Dr. Arthur Carter that he was unaware of, and never approved, Dr. Peoples' increasing her evening work from two to four evenings a week in 1992. Under these circumstances, although our analysis differs slightly with regard to the concept of waiver, we conclude that the MERC did not err in concluding that under § 9.0 respondent had no duty to bargain on the issue of capping the vocational-technical administrators' evening work at twenty-four hours biweekly.

We therefore affirm the MERC's determination that respondent did not violate its statutory duty to bargain on the issue of capping the vocational-technical administrators' work hours.

III

The OSAS's remaining argument with respect to the adult education department heads is that respondent unilaterally implemented a compensatory time-off scheme in lieu of paying overtime. The testimony at the hearing does not support the claim that the rate of compensation for overtime, if authorized, was unilaterally modified; nor did the OSAS present any documentary evidence to support the claim that respondent had implemented a change in rate of pay. Thus, we conclude that the MERC did not err in finding no unfair labor practice with regard to the adult education department heads' pay.

IV

The OSAS next argues that the MERC erred in refusing to exercise its statutory jurisdiction and instead deferring to arbitration the issue regarding respondent's change in the method of compensation of the vocational-technical administrators from per diem to hourly.

Although the OSAS asserts that the MERC erred in deferring the unfair labor practice charge to arbitration, it appears that the MERC simply found that there was no unfair labor practice. Nevertheless, neither the MERC's original opinion nor its opinion regarding the OSAS' s motion for reconsideration clearly explains why it concluded that there was no unfair labor practice. We therefore remand to the MERC with instructions to address this issue anew and to provide a clear explanation of the reasons for its decision.

V

On cross appeal,[5] respondent argues that the MERC erred in refusing to find that the hours at issue were overtime or supplemental hours and that respondent

---

[5] The OSAS argues that respondent has no standing to raise this issue because it is not an aggrieved party. Pursuant to MCL 423.216(e); MSA 17.455(16)(e), any party aggrieved by a final order may seek review of a MERC order in this Court with respect to an unfair labor practice charge. The MERC ruled that the work assignments at issue were bargaining unit work and not overtime. Such a ruling directly affects respondent's bargaining rights because overtime is not part of regular wages and may be unilaterally reduced by an employer. *Roseville v Police Officers Ass'n of Michigan,* 1987 MERC Lab Op 182; *St Clair Co Rd Comm v Local 516M, Service Employees Int'l Union, AFL-CIO,* 1992 MERC Lab Op 316. Respondent is therefore an aggrieved party because the MERC's order affects respondent's rights and bears directly on its interests. *Grace Petroleum Corp v Public Service Comm,* 178 Mich App 309, 312-313; 443 NW2d 790 (1989); *Midland Cogeneration Venture Ltd Partnership v Public Service Comm,* 199 Mich App 286, 304; 501 NW2d 573 (1993).

could thus modify them without bargaining, even though the MERC ultimately found for other reasons that respondent had no obligation to bargain over its actions. As we have already observed, the OSAS's counsel conceded during oral argument that the adult education department heads' evening work was an extension of their normal work and thus overtime. Therefore, the MERC's contrary finding is vacated.

Regarding the vocational-technical administrators, we conclude that the MERC's factual finding that their evening assignments were within the scope of work performed by the bargaining unit and were covered by the contract is supported by competent, material, and substantial evidence on the whole record.

Affirmed in part, vacated in part, and remanded in part. We do not retain jurisdiction.

MARKEY, P.J., concurred.

JANSEN, J. (*dissenting*). I respectfully dissent. I would reverse the ruling of the Michigan Employment Relations Commission (MERC) that respondent, Detroit Board of Education, did not commit any unfair labor practices and remand to the MERC for it to fashion an appropriate remedy in light of a finding that respondent committed unfair labor practices.

I

I concur with the facts as set forth by the majority and reiterate the standard of review. Factual findings of the MERC are conclusive if supported by competent, material, and substantial evidence on the whole record. MCL 423.216(e); MSA 17.455(16)(e); Const 1963, art 6, § 28; *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transporta-*

*tion Authority*, 437 Mich 441, 450; 473 NW2d 249
(1991). Review of factual findings of the MERC is to be
undertaken with sensitivity, and due deference is to
be accorded to its administrative expertise. *Id.*
Reviewing courts should not invade the exclusive
fact-finding province of administrative agencies by
displacing an agency's choice between two reasona-
bly differing views of the evidence. *Id.*

Legal rulings of administrative agencies are not
given the deference accorded factual findings. Legal
rulings of an administrative agency are set aside if
they are in violation of the constitution or a statute,
or affected by a substantial and material error of law.
MCL 24.306(1)(a) and (f); MSA 3.560(206)(1)(a) and
(f); *Amalgamated Transit Union, supra*, p 450.

II

The first argument of the charging party, Organiza-
tion of School Administrators and Supervisors, AFSA,
AFL-CIO (OSAS), is that the MERC erred in finding that
respondent did not violate its statutory duty to bar-
gain when it unilaterally reduced rates of pay and
hours of work for certain school administrators. The
MERC found that respondent was not required to bar-
gain over the hours of work for the school adminis-
trators because in the collective bargaining agreement
the union had waived its right to demand bargaining
over changes in the hours of jobs. With respect to
rates of pay, the MERC determined that a bona fide dis-
pute existed regarding whether the collective bargain-
ing agreement was breached and that this dispute
would have to be resolved through the parties' griev-
ance arbitration mechanism. However, in the order
following the OSAS's motion for reconsideration, the

MERC stated that it found that respondent committed no unfair labor practice with respect to changing the method of compensation.

Under subsection 15(1) of the public employment relations act (PERA), public employers have a duty to bargain over wages, hours, and other terms and conditions of employment. MCL 423.215(1); MSA 17.455(15)(1). Under the PERA, an employer commits an unfair labor practice if, before bargaining, it unilaterally alters or modifies a term or condition of employment, unless the employer has fulfilled its statutory obligation or has been freed from it. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 317; 550 NW2d 228 (1996). An employer may defend against a charge that it has unilaterally altered working conditions by arguing that the union has waived its right to demand bargaining. *Id.*, p 318.

A waiver occurs when a union knowingly and voluntarily relinquishes its right to bargain about a matter. *Dep't of Navy v Federal Labor Relations Authority*, 295 US App DC 239, 248; 962 F2d 48 (1992). When a union waives its right to bargain about a particular matter, it surrenders the opportunity to create a set of contractual rules that bind an employer, and instead gives full discretion to the employer regarding the matter. *Id.* The courts require clear and unmistakable evidence to support a claim that the union has waived the statutory right. *Id.; Port Huron, supra,* p 320.[1]

---

[1] In *Dep't of Navy, supra,* p 247, the court explained that a union will usually clearly and unmistakably waive its right to bargain either by an express agreement (for example, a "zipper clause") or through its bargaining history with the employer. A zipper clause is a provision in a collective bargaining agreement that purports to close out bargaining during the

Section 9.0 of the collective bargaining agreement contains the following:

9.0 HOURS OF WORK

In order to attain ultimate efficiency in the operation of the Detroit Public Schools and to provide the best possible educational program to the pupils served thereby, it is essential for administrative and supervisory personnel to work a schedule which reasonably permits the flexibility necessary for the achievement of such goals. Such a schedule may, at times, involve work in and out of the school building and, at times, frequently outside the regular school day. The professional discretion of good administrators and supervisors in scheduling their hours of work shall be respected insofar as such discretion is reasonable and is consistent with the school program and the aforestated aims. Professional discretion may be denied for good and sufficient reason. *It is understood that this provision does not preclude the setting of hours by the Board or the General Superintendent when necessary,* and is not intended to supersede the requirements of any leave policy. In instances where the General Superintendent or Administrative Heads have established regular work hours, prior approval for any deviation by administrators and supervisors is required. [Emphasis added.]

The MERC found that this section (particularly the emphasized portion) in the collective bargaining agreement established that the OSAS waived its right to demand bargaining over changes in the hours of jobs within the bargaining unit.

I would find that the MERC erred as a matter of law in interpreting § 9.0 to mean that the OSAS waived its right to demand bargaining over changes in the hours of jobs. The initial question whether contract lan-

---

contract term and to make the written contract the exclusive statement of the parties' rights and obligations. *Id.,* p 247, n 8.

guage is ambiguous is a question of law. *Port Huron,
supra*, p 323. If the contract language is clear and
unambiguous, its meaning is a question of law. *Id.*
Where the contract language is unclear or susceptible
to multiple meanings, interpretation is a question of
fact. *Id.* Although I agree with the MERC that the con-
tractual provision is unambiguous, I disagree with its
interpretation of the provision.

In reading the provision as a whole, there is no
waiver by the union of its right to demand bargaining
concerning unilateral changes by the employer
regarding hours of work. Section 9.0 deals with the
scheduling of hours for administrative and supervi-
sory personnel and permits flexible schedules. Sec-
tion 9.0 clearly permits administrators and supervi-
sors the discretion to schedule their work hours, but
provides that such exercise of discretion must be
consistent with the school program and be reasona-
ble. The sentence seized upon by the MERC, when
properly understood, merely allows respondent to set
schedules for administrators and supervisors when
necessary. In other words, administrators and super-
visors do not always work normal "nine to five" busi-
ness hours. Therefore, administrators and supervisors
are accorded discretion in setting their workday
hours under § 9.0. However, if such discretion is
abused by an administrator or supervisor, then
respondent may set work hours. Thus, respondent
could demand that a supervisor must begin work at
8:30 A.M., rather than 9:00 A.M., but the language says
nothing about reducing the number of hours worked.
Accordingly, § 9.0 permits respondent to set a fixed
workday or schedule for the administrators and

supervisors, but it does not waive the union's right to demand bargaining over changes in the hours of jobs.

The difference here is significant. Section 9.0 allows respondent to set schedules; it does not waive the OSAS's right to bargain over the unilateral reduction in hours. There is no "clear and unmistakable waiver" by the union with respect to the employer's unilateral decision to reduce the number of hours worked. See, e.g., *Wayne Co Government Bar Ass'n v Wayne Co*, 169 Mich App 480, 487; 426 NW2d 750 (1988) (the union did not clearly and unmistakably waive its right to bargain over cost-of-living-allowance benefits after the expiration of the collective bargaining agreement where the contractual language stated that the payments for the benefits would "be made quarterly during the term" of the collective bargaining agreement); *Kent Co Ed Ass'n v Cedar Springs Public Schools*, 157 Mich App 59, 66; 403 NW2d 494 (1987) (a "zipper" clause in a collective bargaining agreement waiving the right to collective bargaining on matters covered by the agreement was not a clear and explicit waiver of the right to bargain over the change in the number of high school class periods absent any specific reference in the agreement to the number of class periods). Therefore, I would conclude that the MERC's decision was affected by a substantial and material error of law when it did not properly interpret the parties' collective bargaining agreement. Because hours constitute a mandatory subject of bargaining, respondent could not unilaterally change the number of hours without first bargaining over that condition, absent impasse or waiver. *Ottawa Co v Jaklinski*, 423 Mich 1, 13; 377 NW2d 668 (1985); *Port Huron, supra,* p 317. Therefore, under

the PERA, respondent has committed an unfair labor practice in unilaterally changing the hours to be worked without first bargaining with the OSAS.

III

Respondent, in its cross appeal, argues that the MERC's decision regarding hours of work should be affirmed by this Court for a different reason. Respondent maintains that the hearing referee was correct in ruling that because the hours at issue constituted overtime, this was not a mandatory subject of bargaining and respondent could unilaterally reduce such hours. The MERC rejected the hearing referee's reasoning in this regard and ruled that the evening work assignments "clearly fell within the scope of the work performed by the bargaining unit and covered by the contract."

First, I agree with the majority that respondent has standing to raise this issue. Pursuant to MCL 423.216(e); MSA 17.455(16)(e), any party aggrieved by a final order may seek review of the MERC's order in this Court with respect to an unfair labor practice charge. The MERC specifically ruled that the work assignments at issue were not overtime, but were bargaining unit work. Such a ruling directly affects respondent's bargaining rights because overtime is not part of regular wages and may be unilaterally reduced by an employer. *Roseville v Police Officers Ass'n of Michigan*, 1987 MERC Lab Op 182; *St Clair Co Rd Comm v Local 516M, Service Employees Int'l Union, AFL-CIO*, 1992 MERC Lab Op 316. Therefore, respondent is an aggrieved party because the MERC's order affects respondent's rights and bears directly on its interests. *Grace Petroleum Corp v Public Service*

*Comm*, 178 Mich App 309, 312-313; 443 NW2d 790 (1989); *Midland Cogeneration Venture Ltd Partnership v Public Service Comm*, 199 Mich App 286, 304; 501 NW2d 573 (1993).

Further, I agree that the MERC's factual finding that the assignments in the adult education program and vocational education program were within the scope of the work performed by the bargaining unit and covered by the contract is supported by competent, material, and substantial evidence on the whole record.[2] The MERC's factual findings in this regard are:

> The Administrative Law Judge concluded that Respondent had no duty to bargain over the elimination of overtime/supplemental assignments in the adult education program because these assignments were not bargaining unit work and had no impact on bargaining unit work. First, we disagree with the Administrative Law Judge that these assignments fell into the category of "overtime." Both the adult basic education administrators and the vocational · education administrators had two separate jobs. First, they administered Respondent's daytime adult education or vocational education programs, for which they were paid a salary. Secondly, they administered Respondent's evening adult education programs. The adult basic education administrators were paid an hourly rate for their second job. The

---

[2] At this point, I take issue with the majority's decision to vacate the MERC's finding that the adult education department heads' evening work was not overtime on the basis that the OSAS's counsel conceded during oral argument that the department heads' work was overtime. During oral argument, the OSAS's counsel explained that the union did not challenge the employer's right to say that the department heads could not work in the evening without permission, but objected to the employer's unilateral creation of the compensatory time schedule. I do not take this statement to be a concession that the department heads' evening work was overtime, not subject to mandatory bargaining. In any event, I would agree with the union that respondent was under a statutory duty to bargain regarding the creation of the compensatory time schedule.

vocational education administrators were paid on a per diem basis.

We also disagree with the Administrative Law Judge that the administrators' evening jobs did not constitute bargaining unit work. This work clearly fell within the scope of the work performed by the bargaining unit and covered by the contract. Moreover, it was treated as such by the parties, as exemplified by the fact that Respondent gave Charging Party notice of its proposed actions. The fact that the evening programs were administered by the same administrators who supervised the daytime programs is not relevant to the question of whether the work constituted bargaining unit work.

The MERC's factual findings in this regard are conclusive because they are supported by competent, material, and substantial evidence on the whole record. MCL 423.216(e); MSA 17.455(16)(e). The MERC's finding that the adult basic education administrators and the vocational education administrators had two separate jobs is supported by the testimony of Dr. Kimberly Peoples, the director/administrator of the Golightly Career and Technical Center. She testified that she was paid a daily rate for her work in the evening program before February 1994, and that after the February 1994 change, she was paid an hourly rate for her evening work. Further, she testified that her "regular day school job" was from 7:30 A.M. until 3:15 P.M., and that her adult education work was from 3:15 P.M. until 10:00 P.M. Dr. Peoples also testified that she was a salaried employee. Further, Dr. Arthur Carter, respondent's deputy superintendent of government relations and community services, testified that the full-time job of vocational technical director was separate and distinct from the evening job of department head of a vocational technical center.

The MERC's finding that the administrators' evening jobs constituted bargaining unit work and was covered by the contract is also supported by competent, material, and substantial evidence on the whole record. Sections 8.5 (evening school) and 8.6 (adult education) of the collective bargaining agreement specifically provide for these work assignments.

Accordingly, the MERC's factual finding that the evening hours at issue did not constitute overtime hours is conclusive because that finding is supported by competent, material, and substantial evidence on the whole record.

IV

As its final issue, the OSAS argues that the MERC's deferral to arbitration of the issue regarding respondent's unilateral change in the method of pay for vocational education administrators was a substantial and material error of law.

The MERC found that there was no unfair labor practice with regard to changing the method of pay and that the dispute concerned whether the contract was breached by the change in the method of compensation (from a daily to an hourly basis).[3] I believe that the MERC's decision in this regard was affected by a

---

[3] I note that the MERC's rulings in this regard appear to be contradictory. In the February 2, 1996, decision and order, the MERC stated that the dispute regarding pay was "a bona fide dispute over whether this provision of the contract was breached by the change in the method of compensation." The MERC then stated that the dispute should be resolved through the parties' grievance arbitration mechanism. In its April 22, 1996, decision and order, the MERC stated with respect to the method of pay issue, "we simply found that no unfair labor practice was committed under these circumstances." In fact, the MERC did not so find in the previous decision. However, the MERC's finding that there was no unfair labor practice committed with respect to the change in the method of pay should be addressed because this constitutes a statutory unfair labor practice issue

substantial and material error of law. MCL
24.306(1)(a) and (f); MSA 3.560(206)(1)(a) and (f).

A particular course of conduct may violate contractual and statutory duties. *Port Huron, supra,* p 320. In this case, the OSAS contends that respondent had a duty to bargain over the change of the method of compensation because it is a mandatory subject of bargaining. Clearly, changing the method of compensation from daily to hourly affected wages. See, e.g., *Jackson Community College Classified & Technical Ass'n, MESPA v Jackson Community College,* 187 Mich App 708, 713; 468 NW2d 61 (1991). Wages are a mandatory subject of bargaining. *Id.; Ottawa Co, supra,* p 13. Under the PERA, an employer commits an unfair labor practice if, before bargaining, it unilaterally alters or modifies a term or condition of employment, unless the employer has fulfilled its statutory obligation or has been freed from it. *Port Huron, supra,* p 317.

In its decision and order regarding the motion for reconsideration, dated April 22, 1996, the MERC specifically stated that it found that no unfair labor practice was committed under these circumstances. I must disagree with this ruling because respondent unilaterally changed a method of compensation for the evening classes. Because this affects wages, it was a mandatory subject of bargaining and could not be unilaterally altered by the employer. Therefore, respondent committed an unfair labor practice under the PERA when it unilaterally altered the method of compensation. Respondent had a statutory duty to

---

that cannot be deferred to private arbitration. See *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663; 293 NW2d 278 (1980).

bargain with the OSAS concerning any change in the method of compensation because it directly affected wages.

Accordingly, I would reverse the MERC's ruling that respondent did not commit any unfair labor practices when it unilaterally changed hours of work and the method of compensation. They are mandatory subjects of bargaining and there was no waiver by the union or a fulfillment of respondent's statutory duty to bargain. I would remand to the MERC for it to fashion an appropriate remedy in light of this finding.