GRAND RAPIDS EMPLOYEES INDEPENDENT UNION v CITY OF
GRAND RAPIDS

Docket No. 204825. Submitted November 4, 1998, at Grand Rapids.
Decided April 30, 1999, at 9:05 A.M.

Grand Rapids Employees Independent Union filed with the Michigan
Employment Relations Commission unfair labor charges against
the City of Grand Rapids and the Grand Rapids Housing Commis-
sion after the housing commission terminated an agreement with
the city under which city employees represented by the union had
provided stenographic, technical, and administrative services to the
housing commission. The affected city employees were offered
nonunionized employment with the housing commission. The MERC,
adopting the recommendation of a hearing referee, dismissed the
unfair labor charges, determining that the housing commission and
the city were not coemployers and that the housing commission
had not abrogated the collective bargaining agreement between the
city and the union because the housing commission was not a
party to the agreement. The union appealed.

The Court of Appeals held:

1. Competent, material, and substantial evidence supports the
finding by the MERC that the housing commission was an indepen-
dent employer, not a coemployer. MCL 125.655(3); MSA 5.3015(3),
as amended by 1996 PA 338, authorizes a housing commission to
employ, fix the compensation, and prescribe the duties of its
employees. An ordinance of the City of Grand Rapids provides that
the housing commission may appoint employees as are necesary,
shall prescribe the duties of its employees, and shall have the sole
authority to fix their compensation, fringe benefits, and terms and
conditions of employment.

2. The separation of the housing commission from the city did
not impair vested employee rights under the collective bargaining
agreement between the city and the union. The record indicates
that when the housing commission terminated its contract with the
city, all union members working at the housing commission
retained their rights under the collective bargaining agreement and
any displaced employees would be given jobs with the city pursu-
ant to the terms of the collective bargaining agreement.

3. Issues concerning the alleged violation of civil service rights and reliance by the MERC on an unpublished opinion of the Court of Appeals were not preserved for appellate review.
Affirmed.

1. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — FACTUAL FINDINGS — LEGAL RULINGS — APPEAL.

Factual findings by the Michigan Employment Relations Commission are deemed conclusive on appeal if they are supported by competent, material, and substantial evidence on the whole record; legal rulings by the commission will be set aside only if they are in violation of the constitution or a statute or are affected by a substantial and material error of law.

2. LABOR RELATIONS — EMPLOYERS — CHARACTERISTICS.

An employer characteristically selects and engages employees, pays their wages, has the power of dismissal, and has the power and control over employee conduct.

3. LABOR RELATIONS — MUNICIPAL HOUSING COMMISSIONS — INDEPENDENT EMPLOYER STATUS.

A municipal housing commission is an employer independent of its appointing authority in light of its statutory authority to employ and fix the compensation of employees and to prescribe their duties (MCL 125.655[3]; MSA 5.3015[3]).

*Kalniz, Iorio & Feldstein Co, L.P.A. (by Ted Iorio),* for Grand Rapids Employees Independent Union.

*Varnum, Riddering, Schmidt & Howlett LLP (by John Patrick White and Mary C. Bonnema),* for City of Grand Rapids.

*Rhoades, McKee, Boer, Goodrich & Titta (by Mary Ann Cartwright),* for Grand Rapids Housing Commission.

Amicus Curiae:

*Miller, Canfield, Paddock and Stone, P.L.C. (by John H. Willems, Jay B. Rising, and Philip B. Phillips),* for Michigan Chapter of the National Association of Housing and Redevelopment Officials.

Before: Whitbeck, P.J., and Cavanagh and Neff, JJ.

Neff, J. Grand Rapids Employees Independent Union (GREIU) appeals as of right from the Michigan Employment Relations Commission's (MERC) dismissal of its charges of unfair labor practices. We affirm.

I

The Grand Rapids Housing Commission is a creature of statute. MCL 125.651 *et seq.*; MSA 5.3011 *et seq.* Its powers and duties are statutorily determined and it has the authority to enter contracts necessary to effectuate them. MCL 125.654; MSA 5.3014, MCL 125.657; MSA 5.3017. The act was substantially amended in 1996 and it was those amendments that precipitated the actions that are the subject of this appeal.

On June 2, 1966, the City of Grand Rapids and the housing commission entered into an agreement by which Grand Rapids provided stenographic, technical, and administrative services to the housing commission, for which the housing commission reimbursed Grand Rapids. The services were performed by employees provided by Grand Rapids and the employees were members of GREIU and the Grand Rapids Employees Association of Public Administrators (GREAPA),[1] which negotiated collective bargaining agreements (CBA) with Grand Rapids. Either Grand Rapids or the housing commission could terminate the agreement by giving sixty days' notice.

---

[1] This party was dismissed on appeal by stipulation of the parties.

The federal government was a major source of housing commission funding; the housing commission did not receive any general funds from Grand Rapids. The housing commission was responsible for its own budget, which was approved by the federal Department of Housing and Urban Development. Grand Rapids had no say in or control over the funds received by the housing commission.

The contract between Grand Rapids and the housing commission for providing services continued until 1996 when the housing commission notified Grand Rapids of its intent to terminate the agreement as of the close of business on June 30, 1996. Therefore, as of July 1, 1996, the housing commission would take all its contracted services in-house and become the employer of record for its employees. The Grand Rapids employees-union members could continue to work for the housing commission as housing commission employees in a nonunion setting, and the housing commission issued employee manuals that purported to represent the terms and conditions of employment for the employees at the housing commission.

On June 24, 1996, unfair labor practice charges were filed by GREIU and GREAPA against Grand Rapids and the housing commission. Both unions charged that Grand Rapids had repudiated the terms of the CBA between itself and the unions when it stated that the housing commission was a separate employer and that the union members were no longer covered by the CBAs they had negotiated with Grand Rapids.

GREIU argued that Grand Rapids and the housing commission were coemployers, and therefore the CBA applied to both Grand Rapids and the housing commission. GREIU also asserted that it was a breach of the CBA for the housing commission to unilaterally impose new terms and conditions of employment on the housing commission employees.

After a hearing was held and briefs were filed by the parties, the hearing referee issued a decision and recommended order. The hearing referee concluded that the housing commission and Grand Rapids were not coemployers, provided that Grand Rapids passed a proposed ordinance that authorized the housing commission to provide for the selection and payment of its employees. The hearing referee also concluded that the housing commission had not abrogated the CBAs because it was not a party to the agreements between Grand Rapids and GREIU and GREAPA. Therefore, the hearing referee recommended that the unfair labor practice charges be dismissed. The MERC adopted the recommendation of the hearing referee, and this appeal followed.

II

GREIU argues that the MERC erred in concluding that the housing commission and Grand Rapids were separate employers, not coemployers. We disagree.

A

Our review of the MERC's decision is limited. *Organization of School Administrators & Supervisors, AFSA, AFL-CIO v Detroit Bd of Ed*, 229 Mich App 54,

64; 580 NW2d 905 (1998). The MERC's factual findings are deemed conclusive if they are supported by competent, material, and substantial evidence on the whole record. *Id.* The MERC's legal rulings are afforded a lesser degree of deference and will be set aside " 'if they are in violation of the constitution or a statute, or affected by a substantial and material error of law.' " *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996) (citations omitted).

B

GREIU claims that the MERC erred in concuding that the 1996 amendments of MCL 125.655(3); MSA 5.3015(3) allowed the housing commission to become the employer of record, independent and separate from Grand Rapids. We disagree.

In general, the characteristics of employers are as follows:

> "(1) that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; (4) that they have the power and control over the employee's conduct." [*Michigan Council 25, AFSCME v St Clair Co*, 136 Mich App 721, 736; 357 NW2d 750 (1984), rev'd in part on other grounds 425 Mich 204, 233; 388 NW2d 231 (1986), quoting *Wayne Co Civil Service Comm v Wayne Co Bd of Supervisors*, 22 Mich App 287, 294; 177 NW2d 449 (1970) (citation omitted).]

"A most significant requisite of one who is an employer is his right to exercise control over the method by which the employee carries out his work." *Wayne Co Civil Service Comm v Wayne Co Bd of*

*Supervisors,* 22 Mich App 287, 294; 177 NW2d 449 (1970), rev'd in part on other grounds 384 Mich 363; 184 NW2d 201 (1971).

C

These characteristics of an employer must be viewed in light of the powers granted to housing commissions in the relevant statutes.

1

Before its amendment by 1996 PA 338, MCL 125.655(3); MSA 5.3015(3) provided:

> A president and vice-president shall be elected by the commission. The commission may appoint a director who may also serve as secretary, and other employees or officers as are necessary. The commission shall prescribe the duties of its officers and employees and, *with the approval of the appointing authority,* may fix their compensation. The commission may employ engineers, architects, and consultants, when necessary. [Emphasis added.]

Under this provision, housing commissions did not have the authority to fix the compensation of its employees without approval of the appointing authority. As correctly noted by the MERC, in the absence of this authority a housing commission was not a separate employer, but rather a coemployer with the incorporating unit.

As amended in 1996, MCL 125.655(3); MSA 5.3015(3) now provides as follows:

> A president and vice-president and other officers designated by the commission shall be elected by the commission. *The commission may employ and fix the compensa-*

*tion of a director, who may also serve as secretary, and other employees as necessary.* Upon the recommendation of the appointing authority, the governing body of an incorporating unit may adopt a resolution either conditioning the establishment of any compensation of an officer or employee of a commission upon the approval of the governing body or establishing compensation ranges and classifications to be used by a commission in fixing the compensation of its officers and employees. *The commission shall prescribe the duties of its officers and employees and shall transfer to its officers and director those functions and that authority which the commission has prescribed.* The commission may employ engineers, architects, attorneys, accountants, and other professional consultants when necessary. [Emphasis added.]

We reject GREIU's argument that the 1996 amendments "made minor nonsubstantive corrections, and clarified the existing language." Clearly, the amendments reflect a substantive change: in the absence of a city resolution to the contrary, housing commissions are now permitted to fix the compensation of their employees.[2]

2

In the present case, as provided for in the current version of MCL 125.655(3); MSA 5.3015(3), Grand Rapids has passed an ordinance concerning selection and payment of the housing commission's employees. This ordinance, passed in August 1997, states:

---

[2] We note that other relevant statutes were amended in 1996 to give housing commissions further autonomy. For example, housing commissions are now permitted to purchase property in their own names, MCL 125.661(1); MSA 5.3021(1), to sue and be sued in any court of this state, MCL 125.654(5)(a); MSA 5.3014(5)(a), and to solicit, accept, and enter into agreements for grant money, MCL 125.656(2); MSA 5.3016(2).

> The Grand Rapids Housing Commission may appoint a Director who may also serve as Secretary, and other employees or officers as are necessary. The Grand Rapids Housing Commission shall prescribe the duties of its officers and employees and shall have the sole authority to fix their compensation and fringe benefits, and terms and conditions of employment. [Grand Rapids Ordinance, Chapter 8, Article 5, § 1.356.]

Relying on the statutory interpretation maxim of "Expressio unius est exclusio alterius," which means that the expression of one thing is the exclusion of another, GREIU argues that because the ordinance does not explicitly so state, the housing commission does not have the power to dismiss employees. We disagree and remind GREIU that this maxim is only an aid to interpreting legislative intent and cannot govern if the result would defeat the clear legislative intent to permit severance between housing commissions and the cities they serve. See *Dep't of Treasury v Psychological Resources, Inc*, 147 Mich App 140, 144; 383 NW2d 144 (1985).

Moreover, we may not abandon "the canon of common sense" when construing the ordinance at issue. See *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652; 513 NW2d 799 (1994). Accordingly, in light of the other powers granted to the housing commission, including the power to prescribe the duties of employees and the terms and conditions of employment, we find that the power to "employ" necessarily includes the power to dismiss. The MERC properly determined that the housing commission has both the power to hire and the power to fire its employees.

D

Under the facts presented here, we find that in light of the current version of MCL 125.655(3); MSA 5.3015(3), and the Grand Rapids ordinance granting the power to the housing commission to set the terms and conditions of employment for its employees, there is no longer a question that the housing commission is an employer, separate and distinct from Grand Rapids. The MERC's finding that the housing commission was an independent employer from Grand Rapids was supported by competent, material, and substantial evidence on the whole record.

III

GREIU's second issue on appeal is that the separation of the housing commission from Grand Rapids retroactively impaired its vested employee rights. Again, we disagree.[3]

GREIU insists that Michigan law has "long recognized that collective bargaining agreements create vested contractual rights," and that the 1996 amendments of the Housing Facility Act will retroactively "impair and/or avoid the contractual responsibilities of the City and the Housing Commission." This argument misses the mark. As correctly noted by the housing commission, Grand Rapids, and amicus

---

[3] At the outset, we note that this issue was not raised by GREIU until it filed its exceptions to the hearing referee's decision. However, the MERC addressed the matter in its decision and order, and the facts necessary for resolution of this issue are present in the record before us. See *Frericks v Highland Twp*, 228 Mich App 575, 585; 579 NW2d 441 (1998). Accordingly, we may review this issue on appeal.

curiae,[4] the housing commission was not a party to the CBA between Grand Rapids and GREIU, it did not take part in the negotiations for the CBA, and it was not bound by the CBA.[5] Moreover, GREIU was not a party to the 1966 contract between Grand Rapids and the housing commission, which could be terminated by either the housing commission or Grand Rapids with sixty days' notice.

The record indicates that when the housing commission terminated its contract with Grand Rapids, all GREIU members working at the housing commission retained their rights under the CBA and any displaced employees would be given jobs with Grand Rapids pursuant to the terms of the CBA. Accordingly, the contractual rights and responsibilities of Grand Rapids, the housing commission, and GREIU members were unaffected by the mere separation of the housing commission from Grand Rapids.

IV

GREIU also argues that the civil service rights of its pertinent members or former members were violated by the separation of the housing commission from Grand Rapids. Our review of the record reveals that GREIU has not properly preserved this issue for appellate review.

---

[4] Michigan Chapter of the National Association of Housing and Redevelopment Officials.

[5] The cases cited by GREIU on appeal are thus distinguishable from the present case. See *Gibraltar School Dist v Gibraltar MESPA*, 443 Mich 326; 505 NW2d 214 (1993); *Ottawa Co v Jaklinski*, 423 Mich 1; 377 NW2d 668 (1985); *Washtenaw Community College Ed Ass'n v Washtenaw Community College Bd of Trustees*, 50 Mich App 467; 213 NW2d 567 (1973).

The issue whether the separation of the housing commission from Grand Rapids would alter the civil service rights of GREIU members was not presented by GREIU in its initial charges, at the hearing before the hearing referee, or in its posthearing brief to the hearing referee. Indeed, GREIU did not raise this issue until it filed its exceptions to the hearing referee's decision and recommended order. The MERC expressly declined to address the issue, and we do likewise. It is well settled that our review is generally limited to issues actually decided by the lower tribunal. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 184 Mich App 551, 558; 459 NW2d 15 (1990).[6]

V

GREIU's final issue is that in its decision and order, the MERC improperly relied on an unpublished opinion of this Court, *Village of New Haven v Michigan AFSCME Council 25*, unpublished opinion per curiam of the Court of Appeals, issued December 28, 1995 (Docket No. 158153), which interpreted the former version of MCL 125.655(3); MSA 5.3015(3). Because this issue was not raised in the statement of questions

---

[6] We further deem this issue waived because of GREIU's failure to cite authority in support of its argument that the MERC should have considered the issue regarding civil service rights. GREIU's reliance on *Smith v Muskegon Housing Comm*, unpublished opinion per curiam of the Court of Appeals, issued November 25, 1991 (Docket No. 119009), is misplaced. *Smith*, which addressed the question whether the Muskegon Housing Commission could hire its own employees from outside the civil service system, is wholly inapplicable to the present case. The opinion did not address the issue of CBAs or the abrogation of civil service rights. Moreover, we note that there is no evidence in the record before us that the housing commission, as an independent employer, has altered or will attempt to alter the civil service rights of current or former GREIU members or hire personnel from outside the civil service system.

presented, GREIU has failed to properly present this issue for our review. MCR 7.212(C)(5); *Hammack v Lutheran Social Services*, 211 Mich App 1, 7; 535 NW2d 215 (1995).

We note briefly, however, that the MERC cited *Village of New Haven* for the following principles: (1) that a determination whether a city and a housing commission are separate or coemployers must be made in light of the enabling legislation and relevant local ordinances, and (2) that in the absence of authority to fix the compensation of its employees without approval from the appointing authority, a housing commission is a coemployer with the appointing authority. Without question, these principles are applicable in the present case.

Affirmed.